### TAYLOR v. NORFOLK & O. V. RY. CO.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1908.)

#### No. 776.

MORTGAGES—FORECLOSURE—RETENTION OF JURISDICTION BY TERMS OF DECREE—
    RESTRAINING FORECLOSURE.

    In a foreclosure suit against an electric railway company in a federal court, the receivers were ordered to institute proceedings to condemn the interest of a trustee under mortgages executed by former owners covering the right of way upon which defendant's line was built and which it had purchased from one of the mortgagors and paid for. Pending such proceedings in a state court, decree of foreclosure was entered by the federal court and the property sold, the decree providing that all questions which might thereafter properly arise thereunder were reserved, and the conveyance was made, with the benefit of all suits or proceedings which had been instituted by the receivers. Thereafter the trustee under such mortgages brought suit in a state court for their foreclosure. *Held*, that the federal court retained jurisdiction over the property and suit to such extent as to entitle it to entertain a supplemental bill by the purchaser to enjoin the prosecution of the foreclosure suit until the conclusion of the condemnation proceedings.

    [Ed. Note.—Foreclosure in federal courts, see note to Seattle, L. S. & E. Ry. Co. v. Union Trust Co., 24 C. C. A. 523.]

Appeal from the Circuit Court of the United States for the Eastern District of Virginia, at Norfolk.

Reynolds D. Brown (G. A. Hanson and Burr, Brown & Lloyd, on the brief), for appellant.

Henry W. Anderson (D. Lawrence Groner and Tazewell Taylor, on the brief), for appellee.

Before FULLER, Circuit Justice, and MORRIS and BRAWLEY, District Judges.

MORRIS, District Judge. The proceeding in which the decree appealed from was entered was in the nature of a supplemental bill or petition filed in the case of Charles E. Fink v. Bay Shore Terminal Company and Others. That was a foreclosure suit under a deed of trust made by the Bay Shore Terminal Company, in which a decree was entered for the sale of the property involved in the present supplementary proceeding, and it was sold to the Norfolk & Ocean View Railway Company, a corporation of Virginia, the present complainant. The property so sold was an electric street passenger railway, with its roadbed, rights of way, lands, buildings, bridges, and structures, power plant, cars, and equipment of every kind, beginning at a point near Ocean View, in the county of Norfolk, and extending thence southwardly to the city of Norfolk, Va., together with the franchises, powers, rights, and privileges of the Bay Shore Terminal Company and the estate, right, title, and interest of said company in and to the same. The controversy in the present proceeding has reference to a strip of land, about six miles long, extending from Ocean View to near the city of Norfolk, constituting the right of way on which the rails of the Norfolk & Ocean View Railway Company are placed and the plot of land on which its power house is erected.

The history of the title to this strip of land is as follows: The Tanner's Creek Drawbridge Company in 1865 was empowered to construct and maintain a turnpike from Norfolk to Ocean View, and by amendments to its charter was empowered to widen its road and to "sell or lease along its turnpike a right of way to any company or companies for the operation of an electric railroad and bicycle path or other similar enterprise." In 1898 the Tanner's Creek Drawbridge Company mortgaged its property and franchises to Walter H. Taylor, trustee, to secure an issue of bonds amounting to $25,000, which are still outstanding. In 1900 the Consolidated Turnpike Company acquired, with other turnpikes, the turnpike of the Tanner's Creek Drawbridge Company, subject to the $25,000 mortgage. Thereupon the Consolidated Turnpike Company mortgaged its property to said Walter H. Taylor, trustee, to secure $200,000 of its bonds, a part of which were issued and are still outstanding. Thereupon the Bay Shore Terminal Company was incorporated to construct an electric railway from Norfolk to Ocean View upon the strip of land acquired as aforesaid by the Consolidated Turnpike Company from the Tanner's Creek Drawbridge Company.

The persons organizing the Bay Shore Terminal Company were, it is alleged, and not denied, the same persons who controlled the Consolidated Turnpike Company, the boards of directors were substantially the same, and H. L. Page was president of both companies. Under these circumstances the Consolidated Turnpike Company sold to the Bay Shore Terminal Company the land and right of way in controversy. The consideration therefor was $22,500 of the bonds of the Bay Shore Terminal Company, $5,625 at the par value of the stock of the Bay Shore Terminal Company, an agreement by the Terminal

Company to build and maintain a new drawbridge over Tanner's creek. and an agreement by it to furnish without cost the electricity to operate the draw, if the same was operated by electric current. In consideration of the said bonds and stock and agreements, the Consolidated Company conveyed to the Terminal Company with general warranty the strip of land in question, being the whole length of the road to Ocean View, and provided in the deed that the bonds and stock mentioned as a part of the consideration given for the deed should be transferred and turned over to Walter H. Taylor, trustee, to be held by him under the mortgage deeds to him, to secure, first, the bonds issued by the Tanner's Creek Drawbridge Company, and, secondly, to secure the bonds issued by the Consolidated Turnpike Company. The bonds and stock were subsequently put into the custody of the said Walter H. Taylor, and subsequently they were placed in the hands of a committee who were negotiating a reorganization of the lien claims against the Bay Shore Terminal Company.

The Bay Shore Terminal Company had made a large issue of mortgage bonds, and, becoming insolvent, receivers of it were appointed in the aforementioned case of Fink v. Bay Shore Terminal Company, in which this supplemental bill was filed. A decree for foreclosure having been entered, a sale was made, and the Norfolk & Ocean View Railway Company became the owner of the property. During the proceeding under the receivership, prior to the decree for sale, the special master reported to the court as follows:

"It appears from the said deeds that the title of the Bay Shore Terminal Company to its right of way from Norfolk City Park to Ocean View, and to the said parcel of land, is incumbered by the liens of said deeds of trust. The consideration paid by the Bay Shore Terminal Company to the Consolidated Turnpike Company was paid in bonds and in work, as stated in the deed of the last-named company to the Bay Shore Terminal Company, and was at the time said deed was made, in the opinion of the special master, ample consideration for a good, sufficient, and perfect title to said right of way and parcel of land, and there is no further obligation on the part of the Bay Shore Terminal Company to the Consolidated Turnpike Company to be performed before the said Consolidated Turnpike Company shall make its deed to the Bay Shore Terminal Company perfect. The special master, therefore recommends that the receivers of the Bay Shore Terminal Company be required to demand of the Consolidated Turnpike Company such action on its part as will release the said right of way and parcel of land from the incumbrances of said deeds of trust; and, in the event said Consolidated Turnpike Company shall refuse and fail to do so, the said receivers shall be required to clear the title of the said right of way and parcel of land of all incumbrances, by condemnation proceedings or otherwise. While the receivers have not been, and may not be, disturbed in the possession and use of such right of way and parcel of land, the title to the same is a matter of such vital interest to any future purchaser or owner of the said Bay Shore Terminal Company that it should not be left with any cloud upon it."

And the court thereupon entered the following order:

"This cause came on this day to be again heard upon the papers formerly read; and it appearing to the court, from the report of Special Master R. T. Thorp, that the Bay Shore Terminal Company has never acquired title to a portion of its right of way and to the property upon which its power-house is located, the court doth adjudge, order, and decree that B. W. Leigh, H. L. Page, and J. A. C. Groner, receivers, do proceed in the proper court or courts to institute condemnation proceedings for the purpose of acquiring title to

said property, and said receivers are hereby authorized to take any and all necessary steps to institute and conduct said condemnation proceedings to as speedy a determination as possible.

"January 20, 1906. Edmund Waddill, Jr., U. S. Judge."

Thereupon the receivers did institute condemnation proceedings in the circuit court of Norfolk county to condemn any outstanding interest in the land in controversy; but a certain Arthur W. Depue, having bought some of the Consolidated Company bonds, intervened in the condemnation case, and the same is still pending and unsettled. While the condemnation case instituted by the receivers appointed by the court below was still pending in the state court, the decree for the foreclosure sale was entered and the property sold. By the sixteenth clause of the decree it was provided that:

"All questions as to the distribution of the proceeds of sale, and all questions of costs, expenses, and allowances, and all other questions not disposed of by this decree, or which may properly arise under the same, or are proper subjects for further direction, are reserved."

In the deed executed to the Norfolk & Ocean View Railway Company, a draft of which was submitted to the court and expressly approved by order of the court, it is stated that the conveyance is made "with the benefit of and subject to all suits or proceedings which have been or might be instituted by said receivers." Afterwards the said Arthur W. Depue, as owner of certain of the said mortgage bonds issued by the Consolidated Turnpike Company, instituted in the state county court proceedings for the foreclosure of the mortgage and the sale of the strip of land on which the railway sold by the court below was constructed. Thereupon the Norfolk & Ocean View Railway Company, the complainant in this supplemental case, filed its supplemental bill and petition, praying:

"(1) That said court would construe the scope and effect of its various decrees, deeds, and other acts in said suit, in so far as they affected the rights of the purchaser; (2) that the court would adjudge that a full consideration had been paid to Walter H. Taylor, trustee, for the strip of land in controversy, and remove the cloud from the title thereto caused by the several deeds of trust hereinbefore recited, and that Walter H. Taylor, trustee, might be brought before the court for that purpose, or, as an alternative relief, that Walter H. Taylor, trustee, be required to surrender the consideration in the form of bonds and stock of the Bay Shore Terminal Company received and held by him as aforesaid; (3) that the court would take such steps as might be necessary to protect the title conveyed to the purchaser under its decrees aforesaid, and to this end that it would enjoin Arthur W. Depue and Walter H. Taylor, trustee in the deed of trust aforesaid, from taking any action, in the state court or otherwise, to disturb the rights or the possession of the Norfolk & Ocean View Railway Company, acquired under decrees of the Circuit Court of the United States in the case of Finke v. Bay Shore Terminal Company, as aforesaid, until such rights could be finally determined and litigated by that court."

A temporary restraining order was granted, and subsequently, a plea having been filed by Arthur W. Depue, and answers by Walter H. Taylor, trustee, and by the Consolidated Turnpike Company, together with numerous affidavits, a hearing was had, and the court thereupon, on September 27, 1907, granted a preliminary injunction,

enjoining until the further order of the court Arthur W. Depue, Walter H. Taylor, trustee, and the Consolidated Turnpike Company from—

"prosecuting any suit against the Consolidated Turnpike Company so far as the same affects the title or ownership of the property conveyed by the commissioners of this court to the said petitioner in the above-entitled suit, or from doing any act or thing affecting the possession, use, and enjoyment by the said Norfolk & Ocean View Railway Company of that certain parcel of land between Norfolk and Ocean View occupied by said company as its right of way, being the same land which was conveyed to said company by the commissioners of this court under decree in this cause of the 17th day of February, 1907."

It thus appears that the court below held that it had jurisdiction to entertain the supplemental bill and to maintain the then status until the supplemental bill could be finally heard. The questions now before us are as to the jurisdiction of the court below to entertain the bill, and, if it had jurisdiction, as to the exercise of its discretion in granting the injunction.

It is not to be denied that in the original case, in which the decree for sale was entered and the sale made, the question of the lien of the prior mortgages on this right of way was brought to the attention of the court and was dealt with by the court. By its order of January 20, 1906, the court directed its receivers to proceed by condemnation proceedings to acquire the outstanding interest vested in Walter H. Taylor, trustee, by the mortgage deeds; and the receivers, acting by authority of the court, instituted that proceeding March 3, 1906, which was in rem, of which every one having any interest in the subject matter was bound to take notice. In those proceedings Arthus W. Depue appeared and demurred; but his demurrer was overruled, and he then answered generally. The state court then appointed commissioners, who made their report, which was excepted to by the said Depue. These exceptions, we understand, have not been disposed of, and the case remains pending.

This condemnation proceeding having been so instituted by authority of the court which had possession of the railroad property, and the railroad property having been sold as a going concern, with all its rights of way, franchises, and privileges, it seems clear that when the deed of conveyance recites that the deed conveys the right of way and land in question, "with the benefit of and subject to all suits or proceedings which have been or may be or might be instituted by said receivers," it refers to this very condemnation proceeding designed to acquire whatever remnant of title remained in the trustee to whom the title had been conveyed to secure the mortgage bonds in question. The attempt to foreclose that mortgage by the appellant was an attempt after the condemnation proceedings was instituted to render those proceedings nugatory by selling the property to be condemned, including with it the railroad which had been built on the right of way, and to complete which the court's receivers had spent several hundred thousand dollars, and for which the purchasers at the court's sale had paid $765,000.

It would seem that every equitable consideration supports the right of the court to protect its purchaser by enjoining the foreclosure and

sale of this right of way and strip of land until the condemnation proceedings are concluded. While the property was in the actual custody of the court, no foreclosure by the appellant could take place without its consent. The court directed its receivers to clear the title by condemnation proceedings but before those proceedings were concluded it sold the property; but by its conveyance it reserved to the purchaser the benefit of the condemnation proceeding, the object of which was to condemn the very mortgage interest which the appellant proposes now to enforce. It seems to us clear that it was within the jurisdiction of the court below to make its decree effective by the injunction which it granted, and that the injunction was necessary in order to protect the rights for which the purchaser, under the court's sale, paid his money. Julian v. Central Trust Co , 193 U. S. 93, 24 Sup. Ct. 399, 48 L. Ed. 629; Wabash R. R. v. Adelbert College, 208 U. S. 38–53, 28 Sup. Ct. 182, 52 L. Ed. 379.

Affirmed,