## TAYLOR v. BREESE et al.

(Circuit Court of Appeals, Fourth Circuit. July 21, 1908.)

No. 740.

1. COURTS — FEDERAL COURTS — CIRCUIT COURTS OF APPEALS — APPEAL—CONSTRUCTION OF STATUTE—"HEARING IN EQUITY"—"INTERLOCUTORY" ORDERS.

In Act March 3, 1891, c. 517, § 7, 26 Stat. 828, creating the Circuit Courts of Appeals, as amended by Act Feb. 18, 1895, c. 96, 28 Stat. 666, and Act June 6, 1900, c. 803, 31 Stat. 660 (U. S. Comp. St. 1901, p. 550), relating to appeals from Circuit and District Courts, and providing that

"where upon a hearing in equity * * * an injunction shall be granted or continued or a receiver appointed, by an interlocutory order or decree * * * an appeal may be taken from such interlocutory order or decree," the phrase "hearing in equity" does not mean the trial of an equity cause on the merits; the right of appeal being given from an "interlocutory" order or decree, which means one entered pending the cause and before final hearing on the merits, and disposing of some intervening matter relating to the cause.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 1100.

For other definitions, see Words and Phrases, vol. 4, p. 3712–3715.]

2. SAME—APPEALABLE ORDERS—"ORDER GRANTING INJUNCTION."

Under Act March 3, 1891, c. 517, § 7, 26 Stat. 828, creating the Circuit Courts of Appeals, as amended by Act Feb. 18, 1895, c. 96, 28 Stat. 666, and Act June 6, 1900, c. 803, 31 Stat. 660 (U. S. Comp. St. 1901, p. 550), an appeal lies from a preliminary restraining order granting temporarily the relief prayed for by the bill and requiring the defendants to show cause why it should not be made permanent, which is an order granting an "injunction" within the meaning of the statute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 1100.

Orders, decrees, and judgments reviewable in Circuit Court of Appeals, see note to Salmon v. Mills, 13 C. C. A. 374.]

Appeal from the Circuit Court of the United States for the Eastern District of Virginia, at Norfolk.

Burr, Brown & Lloyd and William L. Royall, for appellant.

Percy S. Stephenson, for appellees.

Henry W. Anderson, for appellee Norfolk & Ocean View Railway Company.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge. On the 23d of March, 1907, Charles Parker Breese commenced the present proceeding by filing his petition in the Circuit Court of the United States for the Eastern District of Virginia, at Norfolk, in the equity case of Charles E. Fink v. Bay Shore Terminal Company et al. The petition reads as follows:

"Your petitioner, Charles Parker Breese, respectfully represents to the court that he is now, and has been for several years, the owner of three bonds of the Bay Shore Terminal Company, one of the defendants in the above-entitled cause, and that his bonds have been proven before the special master appointed herein, and being for $1,000 each. Your petitioner further represents that on the 25th day of January, 1906, an agreement was entered into between S. L. Foster, W. T. Simcoe, and W. C. Cobb, attorneys for your petitioner and others, with D. L. Groner and Tazewell Taylor, the said agreement being especially referred to and shown at page 85 of the record made up for the Circuit Court of Appeals, and at page 60 of the transcript, in the suit of Zell, Appellant, v. Leigh and Others, Appellees. It is especially set out in the aforesaid agreement as follows: 'It is understood between the parties hereto that authority has been given to the present receivers to begin proceedings for the condemnation of such part of the right of way of the said company as is in dispute, and it is further understood that such proceedings are to be begun and concluded without cost to the parties of the second part, hereto, and in the event that the said parties of the second part hereto are called upon to pay anything on account of the said right of way, they shall be reimbursed proportionately by the bondholders herein represented.'

"It was further set out in the said agreement that your petitioner should receive from the parties of the second part, or their assigns, an amount equal to the face value of the bonds surrendered thereunder of an issue of bonds secured upon the property, not to exceed $1,500,000 and a certain amount of stock as therein set out. The right of way above referred to was formerly owned by the Consolidated Turnpike Company, a corporation, but by a deed bearing date on the 1st day of March, 1902, and filed in this cause with the report of the special master, Robert T. Thorp, Esq., the said right of way was sold and conveyed to one of the defendants, the said Bay Shore Terminal Company, and the consideration mentioned therein, your petitioner is informed and therefore alleges, was delivered to the said Consolidated Turnpike Company. Your petitioner is advised, and therefore alleges, that a portion of the said consideration was bonds of the Bay Shore Terminal Company, and that the same are now held by Walter H. Taylor, the trustee hereinafter mentioned, to secure the bonds covered by the deed from the said turnpike to him as trustee. But there existed upon the property two deeds of trust, each of which was made to Walter H. Taylor, trustee, one made on June 1, 1898, for $25,000, and the second deed of trust made on April 2, 1900, for $200,000, and each of the said deeds of trust was, at the time of the aforesaid deed from the said Consolidated Turnpike Company to the said Bay Shore Terminal Company, and is now, a lien upon the aforesaid right of way, or is claimed to be such. Condemnation proceedings to secure the aforesaid right of way were entered in the circuit court of Norfolk county on March 3, 1906, and commissioners therein were appointed on April 14, 1906, to ascertain the value of the aforesaid parcel of land. The record of the said proceedings shows, and your petitioner therefore alleges, that Arthur W. Dupue appeared in the aforesaid proceedings and objected, both by demurrer and answer, to the same, and on account of the aforesaid objection the right of way has not been acquired. The property of the Bay Shore Terminal Company has been sold to the Norfolk & Ocean View Railway Company, and your petitioner is entitled, under the aforesaid agreement, made between the said Foster et al. and the said D. L. Groner and Tazewell Taylor, to $3,000 in bonds, secured by a deed of trust upon the property formerly owned by the Bay Shore Terminal Company, and, if the aforesaid right of way is not held and owned by the said Norfolk & Ocean View Railway Company, the entire property will be valueless, and the bonds of your petitioner will therefore be of little value. The said Arthur W. Dupue, in addition to his objection in the aforesaid condemnation proceedings, secured a judgment in the circuit court of Norfolk county, on March 18, 1907, for the sum of $3,750 against the said Consolidated Turnpike Company, and on the same day filed a suit setting up the obtaining of the said judgment and asking to have the properties of the said turnpike company subjected to his lien, and to the liens of the aforesaid deeds of trust; and on the same day the said Consolidated Turnpike Company appeared, by its president, H. L. Page, and filed an answer admitting the allegations of the said bill, and the said Page was thereupon appointed receiver of the said company.

"Your petitioner further alleges that the said right of way has been in the possession of your honorable court since the date of the appointment of the receivers in the above-entitled cause, and that the aforesaid suit, on the part of the said Dupue, is for the purpose of depriving the said Norfolk & Ocean View Railway Company, as assignee of the said Bay Shore Terminal Company, of the aforesaid right of way. At the time the aforesaid sale was made, by the Consolidated Turnpike Company to the Bay Shore Terminal Company, the said H. L. Page was president of both companies, and the said Page was fully advised of the cloud upon the title of the said piece of right of way by reason of the alleged liens, and while the consideration mentioned in the aforesaid deed from the Consolidated Turnpike Company to the Bay Shore Terminal Company has been fully paid, and an agreement has been entered into by which the Bay Shore Terminal Company's bonds, which were delivered to the said 'Consolidated Turnpike Company, should be exchanged for the new bonds issued by the Bay Shore Terminal Company's assignee, and, notwithstanding the aforesaid cloud upon the title of the said piece of right of way, the said Consolidated Turnpike Company has demanded that

the aforesaid agreement as to the exchange of bonds be carried out. The said turnpike company is also a party to this cause and is now praying your honor to enter a decree in its favor for two years interest on the said Bay Shore bonds given it as a part of the consideration for the aforesaid right of way. The aforesaid suit, in which the said Dupue is plaintiff, and in which the said H. L. Page was appointed receiver, was brought before the execution issued upon the said judgment was returned, and is a collusion on the part of the said Dupue and the said Page to deprive the said Norfolk & Ocean View Railway Company of the parcel of right of way aforesaid, and this conduct on the part of the said Dupue and the said Page, which your petitioner believes and alleges is a part of the plan heretofore conducted by F. D. Zell and others to control or destroy the property of the said Bay Shore Terminal Company, will render your petitioner's bonds of little value, for which adequate damages cannot be secured in a court of law.

"For as much, therefore, as your petitioner is without remedy save in your honor's court, he prays that the said Arthur W. Dupue and the said Walter H. Taylor, trustee, the Norfolk & Ocean View Railway Company, a corporation, and the Consolidated Turnpike Company, a corporation, be made parties defendant hereto, and be required to answer, but answer under oath is hereby expressly waived, and that they, the said Arthur W. Dupue, Walter H. Taylor, trustee, and the Consolidated Turnpike Company, and all other persons, their agents, attorneys, servants, and employés, and all other persons or corporations acting by or through them, on their order or on their behalf, may be enjoined and restrained, until the further order of this court, from any act or acts whereby the status of the said right of way or any part thereof may be changed or disturbed, or whereby the possession and user of the Norfolk & Ocean View Railway Company may be interfered with. And your petitioner further prays that such relief, whether general or special, may be granted him, as may be meet and proper in the premises. And he will ever pray."

And on the said day, the court entered this order:

"This cause coming on to be heard upon the papers formerly read, and upon motion of Charles Parker Breese, by his counsel, Percy S. Stephenson, asking leave to file his petition herein, and was argued by counsel. Upon consideration whereof, it is ordered that the same be filed, which is accordingly done, and that Arthur W. Dupue, Walter H. Taylor, trustee, Norfolk & Ocean View Railway Company, and Consolidated Turnpike Company, a corporation with its principal office in the city of Norfolk, Va., be made parties defendant hereto. It is further ordered that the said Arthur W. Dupue, his agents and attorneys, and all other persons, be and are hereby temporarily restrained, until the further order of this court, from prosecuting, in the circuit court of Norfolk county a suit against the Consolidated Turnpike Company, so far as it affects the property hereinafter described, and the said Arthur W. Dupue, his agents and attorneys, and all other persons, are restrained, as aforesaid, from prosecuting any other suit affecting the same, and Walter H. Taylor, trustee, the Consolidated Turnpike Company, and their servants, agents, and attorneys, and all other persons, are temporarily restrained, until the further order of this court, from in any way disturbing and from the doing of any act in any way affecting the Norfolk & Ocean View Railway Company in its use or possession of that certain parcel of land leading from Norfolk to Ocean View, occupied by the said company as the right of way, and being the same which was conveyed to the Bay Shore Terminal Company by Consolidated Turnpike Company, by its deed of March 1, 1902, and which was conveyed among other properties of the Bay Shore Terminal Company, by deed of February 6, 1907, duly of record in the clerk's office of the corporation court of the city of Norfolk, from Floyd Hughes and others, special commissioners and others, to the Norfolk & Ocean View Railway Company, a corporation existing under the law of the state of Virginia. It is further ordered that a copy of this decree and of the aforesaid petition be served upon Walter H. Taylor, trustee, Consolidated Turnpike Company, and Norfolk & Ocean View Railway Company, and that copies of the same be served upon N. T. Greene, of counsel for the defendant, Arthur W. Dupue. And it is

further ordered that the said defendants and each of them show cause, in the city of Norfolk, on the first Monday in May, 1907, or as soon thereafter as the same may be heard by this court, why this restraining order should not be made permanent."

From this order, Walter H. Taylor, trustee, appealed to this court.

Previous to the filing of Breese's petition, as appears, the suit of Fink v. Bay Shore Terminal Company et al., had been brought for the purpose of foreclosing a certain deed in trust executed by the terminal company to the Atlantic Trust & Deposit Company, trustee, amounting to $500,000. A decree of sale was entered by the circuit court, at Norfolk, on the 17th day of March, 1906, in which it was directed that the following property be sold, to wit:

"All that certain railroad, railway, roadbed, rights of way and lands, buildings, bridges, structures, engines, boilers, power plant, poles, wires, motors, cars, rolling stock, equipment of every kind, and all and singular the estate, real, personal and mixed, of the Bay Shore Terminal Company's railroad, beginning at a point near Ocean View, in the county of Norfolk, and extending thence southwardly to the city of Norfolk, Virginia, and over and upon numerous streets of said city, as allowed by franchises granted by the councils of the city of Norfolk, together with all extensions, cross-tracks and turnouts, poles, wires, appurtenances and fixtures which may be laid by said company under rights and powers now owned or hereafter obtained; together, also with all of the franchises, powers, rights and privileges of the said company, and together with all and singular the easements, hereditaments, incidents and appurtenances whatsover, thereunto belonging or in any wise appertaining, and all the estate, right, title and interest of the said company in and to the same and every part thereof."

Under the authority of the decree for sale the property was sold and purchased by Edward B. Smith & Company at the price of $765,000. This sale was duly reported to the court by the commissioners appointed to make it and was, on the 21st of November, 1906, confirmed, and on the 7th of February, 1907, a deed was duly executed by the commissioners and delivered to the purchasers under the direction of the court, conveying all of said property to the purchasers. During the progress of the suit of Fink v. Bay Shore Terminal Company et al., and prior to the decree for sale, to wit, on the 20th day of January, 1906, the court entered the following decree:

"This cause came on this day to be heard upon the papers formerly read, and it appearing to the court from the report of the special master, R. T. Thorp, that the Bay Shore Terminal Company has never acquired title to a portion of its right of way and to the property on which its power house is located, the court doth adjudge, order, and decree that B. W. Leigh, H. L. Page, and J. A. C. Groner do proceed in the proper court or courts to institute condemnation proceedings for the purpose of acquiring title to said property, and said receivers are hereby authorized to take any and all necessary steps to institute and conduct said condemnation proceedings to as speedy a determination as possible."

This decree directing proceedings for condemnation of the right of way was based upon the report of the special master, the terms of which report are substantially set out in plaintiff's petition, and the further fact is set out therein that condemnation proceedings were instituted in the circuit court of Norfolk county, Va., on March 3, 1906, to condemn the right of way, and commissioners were appointed on the 14th of April, 1906, under an order of the court, to ascertain the

value. This suit was pending in the said court of Virginia and undetermined at the time of the filing of plaintiff's intervention. It appears further from the petition: That the right of way referred to was formerly owned by the Consolidated Turnpike Company, a corporation, but was, on the 1st day of March, 1902, sold and conveyed by that company to the Bay Shore Terminal Company, and the consideration for this purchase is alleged to have been fully paid; that a portion of the said consideration was bonds of the Bay Shore Terminal Company; and that these bonds are now held by Walter H. Taylor, the appellant in this case. And it is further charged in the bill, and admitted as a fact, that Walter H. Taylor is trustee in two several deeds of trust executed by the Consolidated Turnpike Company, one dated June 1, 1898, to secure bonds of the said Turnpike Company to the amount of $25,000 and the second dated April 2, 1900, to secure other bonds of said turnpike company to the amount of $200,000. And it is further set out in the bill that at the time of the conveyance of the right of way from the Consolidated Turnpike Company to the Bay Shore Terminal Company these deeds in trust were liens upon the interest and property of the said turnpike company in the lands over which the said right of way, conveyed as before stated, extended.

Two questions are presented to the court upon this appeal: The first as to whether an appeal will lie from the order of March 23, 1907, entered by the Circuit Court; and, second, whether complainant's petition, on the facts averred therein, states a cause of action sufficient to authorize the court, sitting in chancery, to entertain jurisdiction. The first question arises under the seventh section of the act of March 3, 1891 (26 Stat. 828, c. 517), as amended by the act of June 6, 1900 (31 Stat. 660, c. 803 [U. S. Comp. St. 1901, p. 550]); the said section, as amended, being as follows:

"That where upon a hearing in equity in a District Court or in a Circuit Court, or by a judge thereof in vacation, an injunction shall be granted or continued, or a receiver appointed by an interlocutory order or decree in a cause in which an appeal from a final decree may be taken under the provisions of this act to the Circuit Court of Appeals, an appeal may be taken from such interlocutory order or decree granting or continuing such injunction, or appointing such receiver, to the Circuit Court of Appeals."

The order appealed from was granted in vacation and is an interlocutory order. The question first to be determined involves two inquiries: Was the order appealed from granted upon a hearing in equity, and is the order an injunction as contemplated by the statute? An affirmative answer to both of these questions is necessary to bring the case by appeal to this court.

It is contended by the appellee that the phrase "hearing in equity" used in the statute, must be construed to mean the "trial" of an equity cause upon its merits, and a number of authorities are cited to sustain the position that a "hearing in equity" is synonymous with the term "trial" in a case at law. We concede that the term "hearing" is used ordinarily in an equity cause to refer to that stage in the proceeding at which the case is before the court after pleadings are completed and the proofs, or at least some of them, have been taken; but if we construe the act we are considering to mean that an appeal

cannot be taken from an injunction, or a decree appointing a receiver, unless such injunction is granted, or such decree entered, upon a final hearing, we would, in our opinion, destroy the whole purpose of the law. There was no need of a statute to authorize an appeal from a final decree in equity, for that right already existed. The object of Congress is, as expressly declared in the statute, to provide for an appeal from an order or decree granting or continuing an injunction, or appointing a receiver, where such order or decree is interlocutory in character. The term "interlocutory," used in the act, dispels at once the idea that the appeal provided for could not be taken until the final hearing or the trial of the cause on the merits, for that term means something done between the commencement of an action and its determination. "Interlocutory," in law, means not that which decides the cause, but that which settles some intervening matter relating to the cause.

It is scarcely necessary to cite authorities for this definition of the term "interlocutory," for they are many, both federal and state; but we take the liberty of referring to Wooster v. Handy (C. C.) 23 Fed. 49, Bissell Carpet Sweeper Company v. Goshen Sweeper Company, 72 Fed. 545, 19 C. C. A. 25, and Dudley E. Jones Company v. Munger Improved Cotton Machine Mfg. Co., 50 Fed. 785, 1 C. C. A. 668; also, Teaff v. Hewitt, 1 Ohio St. 511, 59 Am. Dec. 634; McKinney v. Kirk, 9 W. Va. 26, and Daniel (2) Chancery Practice, c. 26, § 1. In all of these cases it is held: That "an interlocutory decree is a decree rendered when the consideration of a particular question to be determined in the litigation for the further consideration of the cause in general is reserved until some future time." That "an interlocutory decree is one which is made pending the cause and before a final hearing on the merits." We are led to the conclusion therefore that the order of March 23, 1907, was granted upon a hearing in equity, such as is contemplated by the statute. This then brings us to the question whether the order was an injunction from which an appeal will lie, the consideration of which necessarily involves the character and effect of the order.

The case in which the present action was taken was already pending in the Circuit Court. It was the case of Charles E. Fink v. Bay Shore Terminal Company and Atlantic Trust & Deposit Company, Trustee, which was brought to foreclose a mortgage executed by the first-named company to secure the payment of its bonds. The property of the Bay Shore Company had been sold under a decree of the court and purchased by the Norfolk & Ocean View Railway Company, the sale confirmed, and deed executed to the purchaser. The master appointed in the course of the proceedings in the case had reported that a part of the right of way of the Bay Shore Company was incumbered in the following manner: That the said right of way was formerly owned by the Consolidated Turnpike Company, a corporation, which had, by deed dated the 1st of March, 1902, conveyed the same to the Bay Shore Terminal Company, but that at the time of the conveyance there existed upon the property conveyed two deeds in trust, each of which was made to Walter H. Taylor, trustee, one executed on the 1st of June, 1898, to secure the payment

of $25,000 of the bonds of the Consolidated Turnpike Company, and the other dated on the 2d of April, 1900, to secure the payment of an additional $200,000 of the bonds of said company. When this fact was made known to the Circuit Court, an order was entered in the case of Fink v. Bay Shore Terminal Company et al., directing the receivers who had been appointed in the case to institute proceedings for the condemnation of the right of way which had theretofore been conveyed to the Bay Shore Company by the Consolidated Turnpike Company, in order to relieve that part of the said right from the lien of the two deeds in trust, and the receivers, in obedience to the direction of the court, commenced the condemnation proceedings in the circuit court of Norfolk county, Va., on the 3d of March, 1906, and commissioners were duly appointed, as appears by the record, on the 14th of April, 1906, to appraise the value of the right of way as provided under the laws of the state of Virginia, and, as further appears, this proceeding is still pending undetermined. The petitioner intervened in this action and seeks the relief set out and, among other things, an injunction against Arthur W. Dupue, Walter H. Taylor, trustee, and the Consolidated Turnpike Company from in any way disturbing or doing any act in any way affecting the Norfolk & Ocean View Railway Company in its use and possession of the right of way heretofore referred to. The order entered on March 23, 1907, restrained Dupue and Walter H. Taylor, trustee, from doing the acts which the complainant sought by his petition to enjoin, and required them to show cause on the first Monday in May following why the restraining order should not be made permanent. So the effect was to give the injunctive relief demanded in the bill, to remain in force permanently, unless the defendants themselves showed cause sufficient to authorize the court to dissolve it.

There are several decisions of the Circuit Court of Appeals and of the Circuit and District Courts of the United States upon the construction of the statute we are considering; but they are not in harmony, and the main question involved in this case has not, so far as we have been able to find, been presented directly to the Supreme Court; but in Re Tampa Suburban Railroad Company, 168 U. S. 583, 18 Sup. Ct. 177, 42 L. Ed. 589, the reasons assigned by the court for the denial of a writ of certiorari we think sustain the view that an appeal will lie from a preliminary restraining order. In that case, as stated, there was an application for the review of two interlocutory orders, the one a preliminary restraining order and the other appointing a receiver and continuing the injunction in aid of the receivership. Chief Justice Fuller, in delivering the opinion refusing the writ, cites the seventh section of the Judiciary Act of March 3, 1891 (26 Stat. 828, c. 517) as amended by Act February 18, 1895, c. 96, 28 Stat. 666, and Act June 6, 1900, c. 803, 31 Stat. 660 (U. S. Comp. St. 1901, p. 550), and says that:

"An appeal to the Circuit Court of Appeals might have been taken from these orders or from an order refusing to set them aside and dissolve the injunction."

And in Smith v. Vulcan Iron Works, 165 U. S. 518, 17 Sup. Ct. 407, 41 L. Ed. 810, Mr. Justice Gray delivered the opinion, which

involved to some extent a construction of the above-mentioned statute, and in the course of the opinion he said:

"The manifest intent of this provision, read in the light of the previous practice in the courts of the United States, contrasted with the practice in courts of equity of the highest authority elsewhere, appears to this court to have been, not only to permit the defendant to obtain immediate relief from an injunction, the continuance of which throughout the cause might seriously affect his interest, but also to save both parties from the expense of further litigation, should the appellate court be of the opinion that the plaintiff was not entitled to an injunction because his bill had no equity to support it."

The order of March 23, 1907, was at least a preliminary restraining order. It had all of the effects, so far as the defendants were concerned, of an injunction, because it forbade them to do the acts which the complainant sought to restrain, and this restraint was continuing, unless by subsequent action of the court, based upon good cause to be shown by the defendants, the order was vacated. We must conclude therefore that the order entered by the Circuit Court on March 23, 1907, was granted upon a hearing in equity, and that it is also an injunction, and, having come to this conclusion, it necessarily follows that the appeal was properly taken.

This court, in the opinion filed by it in the case of Walter H. Taylor, Trustee, v. Norfolk & Ocean View Railway Company (decided during the present term) 162 Fed. 452, a case involving the facts now presented for our consideration, affirmed the right of the court below to restrain all proceedings relating to the underlying turnpike mortgages, until the condemnation suit concerning the right of way now claimed by the appellee, the Norfolk & Ocean View Railway Company, could be completed. That decision in effect disposed of the questions of jurisdiction now relied on by the appellant, and, as this appeal presents no disputed fact, none of the defendants below having either demurred, answered, or pleaded, it would not be proper for this court to now pass on the merits of the claim presented in the petition of the appellee, Breese, as that will be done by the court below in due time. Let the case be remanded, with permission to the defendants below to make such defense to the petition as they respectively may find proper, and for such further proceedings as to equity appertains. The costs in this court will be paid, one-half by the appellant, and one-half by the appellees.

Affirmed.