398 S.E.2d 528

# BLOSS & DILLARD, INC.

v.

# WEST VIRGINIA HUMAN RIGHTS COMMISSION and Pamela Preston.

No. 19417.

Supreme Court of Appeals of West Virginia.

Oct. 25, 1990.

---

Dwight J. Staples, Henderson & Henderson, Huntington, for WV Human Rights Com'n and Pamela Preston.

Andrew H. Miller, Maurice J. Flynn, Flynn, Max, Miller & Toney, Lafe C. Chafin, Barrett, Chafin, Lowry & Hampton, Huntington, for Bloss & Dillard, Inc.

PER CURIAM:

The appellant, Pamela Preston, appeals an order of the Circuit Court of Cabell County entered on July 26, 1989, reversing

the decision of the West Virginia Human Rights Commission entered on January 16, 1985, which determined that the appellee, Bloss & Dillard, Inc., had violated the Human Rights Act by engaging in sex discrimination. The appellant contends that the circuit court failed to adhere to the limited scope of judicial review as set forth in *W. Va. Code*, 29A–5–4 [1964]. We agree, and accordingly, the order of the Circuit Court of Cabell County is reversed.

The appellee is a closely held corporation involved in the wholesale underwriter and brokerage insurance business. This corporation has three main stockholders who are also full-time employees: Earle Dillard, president and treasurer, William Johe, vice president and secretary, and Frank Bloss, vice president. The corporation comprises six departments: property, casualty, transportation, personal lines, agency and claims, and accounting.

Underwriters are assigned to work in property, casualty, transportation and personal lines. An underwriter acts as a "middle man" between insurance agents, who contact the customer directly, and insurance companies, which assume the risks stated on the policies. Underwriters are contacted by insurance agents who need information regarding rates and insurability of certain risks for particular insurance companies. The duties of an underwriter consist of: (1) evaluating risks based upon information supplied by the insurance agent; (2) determining the insurability; (3) pricing the premium rate; and (4) placing the risk with an insurance company.

The appellant applied for a position with the appellee on March 19, 1976.[1] The appellee hired the appellant as an underwriter in the personal lines department on March 23, 1976. A former underwriter employed by the appellee trained the appellant for approximately two weeks to underwrite items such as motorcycles, mobile homes, campers, travel trailers and motor homes.

On April 25, 1978, the appellant was discharged from her employment with the appellee because the appellee maintained that she was behind in her work.[2] On May 17, 1978, the appellant filed a verified complaint alleging that the appellee had discriminated against her in her employment as an individual on the basis of sex, and further alleged that the appellee had engaged in a pattern and practice of sex discrimination in employment.[3] Specifically, the appellant averred that: (1) the female employees were required to pay for their own parking whereas the male employees' parking was paid for by the company; (2) only female employees were required to punch a time clock and to adhere to an allotted time for lunch; (3) female employees were not permitted to leave work because of family problems but male employees were permitted to do so; and (4) as an underwriter, she performed the same duties as the male underwriters but was paid substantially less. The Commission subsequently issued a letter of determination in which it found probable cause to believe that the Human Rights Act had been violated with respect to the allegation of discriminatory practices, both as to the appellant individually, and in a pattern and practice against the female employees generally. The Commission, however, also found that there was no probable cause to believe that the appellant's discharge was the result of an illegal reprisal.

A hearing was conducted on November 8, 1982. The Commission subsequently entered an order dated January 16, 1985, which adopted the hearing examiner's find-

---

1. On her application, the appellant requested that she be considered for a position as a file clerk or for any position available. The appellant was a high school graduate, and had previously been employed as a statistical recording clerk for the Stonewall Jackson Insurance Company.

2. Glenn Seabloom, a male underwriter, testified that he was behind in his work "half the time" while employed by the appellee, and that "it was generally known that most everybody was behind."

3. On May 17, 1978, the appellant also filed a second complaint with the Commission, charging the appellee with reprisal under the West Virginia Human Rights Act for discharging her on April 25, 1978, from her employment because of her assertion of her rights under the Human Rights Act.

ings, and determined that the appellant had shown that she was discriminated against on the basis of sex in the terms and conditions of her employment. The Commission ordered the appellee to permanently cease and desist from engaging in employment practices that discriminated against persons on the basis of their sex. The appellee appealed the Commission's decision to the Circuit Court of Cabell County, and by order entered on July 26, 1989, the circuit court reversed the Commission's decision. It is from that order that the appellant now appeals.

The principal issue before this Court on appeal is whether the Circuit Court of Cabell County erred by failing to comply with the standard of judicial review set forth in *W.Va.Code,* 29A-5-4(g) [1964].

■ The standard of judicial review which the circuit court must follow in contested cases under *W.Va.Code,* 29A-5-4(g), was stated by this Court in syllabus point 2 of *Shepherdstown Volunteer Fire Dep't v. State ex rel. State Human Rights Commission,* 172 W.Va. 627, 309 S.E.2d 342 (1983):

> Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions, or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made

upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'

*See also Board of Education of Lewis County v. West Virginia Human Rights Commission,* 182 W.Va. 41, 44, 385 S.E.2d 637, 640 (1989); *Frank's Shoe Store v. West Virginia Human Rights Commission,* 179 W.Va. 53, 56, 365 S.E.2d 251, 254 (1986).

■ Furthermore, we explained the procedure to be followed by the reviewing court in *Frank's Shoe Store, supra:*

> [A] reviewing court must evaluate the record of the agency's proceeding to determine whether there is evidence on the record as a whole to support the agency's decision. The evaluation is conducted pursuant to the administrative body's findings of fact, regardless of whether the court would have reached a different conclusion on the same set of facts.

(citation omitted) 179 W.Va. at 56, 365 S.E.2d at 254.[4] Finally, we reiterate the doctrine stated by this Court in syllabus point 1 of *Frank's Shoe Store, supra:*

> 'West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties.' Syl. pt. 1, *West Virginia Human Rights Commission v. United Transportation Union, Local No. 655,* 167 W.Va. 282, 280 S.E.2d 653 (1981).

■ In the instant case, the following findings of fact entered by the Commission, which we have summarized, were

---

**4.** In *Frank's Shoe Store,* we cited the following language of the United States Supreme Court in *Anderson v. City of Bessemer City,* 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985):

> This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.... If the district court's account of the

evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.

179 W.Va. at 56, 365 S.E.2d at 254.

clearly supported by the evidence: (1) no male underwriters or department heads punched the time clock whereas all female underwriters[5] and female department heads, were required to punch the time clock; (2) male employees often took lunch hours longer than one hour, but female employees were expected to punch the time clock, and could not take in excess of one hour; (3) personal leave time was made available to male employees to do such things as look for apartments or take family members to the doctor, but female employees were discouraged from taking time off unless they were sick; (4) female employees were asked to sort the mail when the file clerk was unavailable but male employees were not; (5) training, both on the job and elsewhere, was made available on a more regular basis to male employees than female employees;[6] (6) during the period of the appellant's employment, three males were hired to be department heads; (7) there were no female department heads until 1978; (8) wages paid to male underwriters or department heads were substantially higher than wages paid to females with equivalent rank;[7] (9) no female underwriter was given a parking place during the appellant's employment; and (10) the difference between the job performed by an underwriter hired to handle casualty insurance and the job performed by the appellant was a matter of degree, not of kind.[8]

Upon review of the record in this case, we conclude that the Commission's finding of discrimination is supported by substantial evidence. The Circuit Court of Cabell County exceeded the standard of review set forth in *W. Va. Code*, 29A–5–4(g) [1964] by substituting its judgment for that of the Commission. Thus, the final order of the Circuit Court of Cabell County is reversed, and the final order of the West Virginia Human Rights Commission is reinstated.

Reversed.

---

5. We note that "female underwriters" and "female employees" include the appellant during the time of her employment with the appellee.

6. In one instance, the appellant was told that she would be given training, but a male employee was sent in her place.

7. The Commission found that male underwriters and department heads were paid an average of $1,278 per month whereas female underwriters and department heads were paid an average of $650 per month.

8. The Commission found that the lines of insurance for which Glenn Seabloom, a male underwriter who handled casualty insurance, were

somewhat more complex than the lines of insurance handled by the appellant. However, the Commission recognized that both of these positions involved the same basic process of collecting information, evaluating that information for insurability, the appropriate rate and insurance company, and contacting the insurance company to finalize the contract. Yet, Mr. Seabloom was paid over twice the amount the appellant was paid. The appellant, who was never offered the opportunity to learn how to handle casualty insurance, could have been trained to do so since Mr. Seabloom received training for his position on the job.