582 S.E.2d 885

**STATE of West Virginia ex rel. Darrell V. McGRAW, Jr., Attorney General, Plaintiff Below, Appellant,**

v.

**TELECHECK SERVICES, INC., et al., Defendant Below, Appellee.**

No. 30731.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 11, 2003.

Decided May 23, 2003.

---

Norman Googel, Assistant Attorney General, Jill L. Miles, Deputy Attorney General, Charleston, for Appellant.

Niall A. Paul, Esq., Bruce M. Jacobs, Esq., Spilman Thomas & Battle, Charleston, for Appellee.

STARCHER, C.J.

In this case we conclude that a circuit court applied an erroneous standard in ruling on a request by the Attorney General for a preliminary injunction in a consumer protection case. We remand the case for hearing on the merits of permanent injunctive relief.

## I.

### Facts & Background

On December 4, 2000, the Attorney General filed an action under *W.Va.Code*, 46A–1–101 *et seq.*, the West Virginia Consumer Credit and Protection Act ("WVCCPA") alleging that the appellee, Telecheck Services, Inc. ("Telecheck"), a national corporation, was engaging in illegal, unfair, or deceptive acts or practices ("UDAPs") in West Virginia. The Attorney General's complaint asked the court to grant temporary and permanent injunctive relief prohibiting future UDAPs by Telecheck. The Attorney General also sought an award of civil penalties, restitution to consumers, and attorney fees and costs.

Telecheck advertises that it serves over 228,000 clients nationally. When a person presents a personal check to pay for a purchase at a store that has a contract with Telecheck, the store electronically transmits information on the check to Telecheck; Tele-

check replies (apparently within seconds) with a "guarantee/no guarantee" response, based on whether or not Telecheck has "negative information" on the check writer.

If the response from Telecheck is "guarantee," then—if the store accepts the check and the check subsequently is dishonored by the bank (i.e., a "bad check")—Telecheck will pay the store the amount of the check, and obtain an assignment of the check from the store. Telecheck then proceeds to try to collect the amount of the check from the check writer.

If the response from Telecheck is "no guarantee," the store remains free to accept the check, but Telecheck will not reimburse the store for the amount of the check if it is dishonored. The evidence in the proceedings below showed that ordinarily a store will not accept a check that Telecheck will not guarantee. Telecheck charges merchants various fees for its services.

The Attorney General's complaint alleged that Telecheck places and keeps consumers' names in its negative information database in circumstances when Telecheck knows or through reasonable diligence should know that the consumer did not previously write a bad check; or that a previous bad check was the result of theft, forgery, or lack of authorization; or that a previously written bad check subsequently cleared or the account was otherwise satisfied—and that this conduct by Telecheck was unfairly causing certain consumers annoyance and inconvenience when their checks were not accepted by stores due to Telecheck's inaccurate information.

The Attorney General also claimed that Telecheck had engaged in other UDAP conduct, including: adding illegal and excessive service charges when it collects on checks that it has guaranteed; re-presenting checks to banks when Telecheck knows or should know that there are not sufficient funds in consumers' accounts, thereby subjecting con-

sumers to further fees and charges; collecting checks by electronically debiting the accounts of consumers without their properly verified consent, and improperly charging fees for such debiting; and harassing consumers on the phone and with threatening letters, in order to collect on checks. The Attorney General also claimed that Telecheck's negative database is in effect a "deadbeat list" and that Telecheck has not registered as a "collection agency" as required by *W.Va.Code,* 47–16–4 [1973].

The Attorney General filed with his complaint copies of fifty consumer complaint forms (with attachments) identifying instances of alleged conduct by Telecheck involving West Virginia consumers that the Attorney General claimed fit within the foregoing categories of alleged UDAP conduct.

Telecheck filed a motion to dismiss the Attorney General's complaint. The circuit court initially denied the motion to dismiss in an order that sustained some of the Attorney General's basic legal arguments. The court then withdrew that order, and issued a more limited order—still denying the motion to dismiss, but reserving the legal issues in the case.

Limited discovery ensued, followed by two evidentiary hearings, on February 9 and April 6, 2001, where seven consumers and two representatives of Telecheck testified. The circuit court thereafter entered an order, on May 10, 2001, denying the Attorney General's request for preliminary injunctive relief. It is this order that the Attorney General has appealed to this Court.[1]

The circuit court's order denying the Attorney General's request for a preliminary injunction contained, *inter alia,* the following statements, findings, and conclusions:

The Attorney General alleges that injunctive relief is necessary because Tele-Check engaged in a *pattern or practice* of

---

1. The circuit court apparently did not notify the parties of this order until May 17, 2001. Meanwhile, on May 15, 2001, Telecheck removed the case to federal court, on the theory that the Attorney General had invoked federal jurisdiction by asserting that Telecheck was a "consumer reporting agency" as defined by the Fair Credit Reporting Act, 15 U.S.C.A. Sec. 1681. The feder-

al court returned the case to state court on November 23, 2001, holding that the State's substantive claims against Telecheck were based on state law, although they referred to standards of conduct also set forth in federal law; and also that Telecheck had in any event filed its removal petition untimely.

violating the West Virginia Consumer Credit Protection Act (hereinafter "the Act"), W.Va.Code Section 46A–1–101 (1999), *et seq.* The Court **FINDS** from the testimony presented thus far that the State has not met its burden of proof for temporary injunctive relief that TeleCheck . . . [is] engaging in a *pattern of* [sic] *practice* of violating the Act.

\* \* \* \* \* \*

## I. *FINDINGS OF FACT*

1. The Attorney General has not met its burden to show by a preponderance of evidence that TWV or TRS engaged in a *pattern of practice* [sic] of violating the Act.

\* \* \* \* \* \*

## II. *CONCLUSIONS OF LAW*

\* \* \* \* \* \*

4. The Attorney General's request for injunctive relief is based upon the assertion that the defendants have engaged in a *"pattern or practice"* of alleged wrongful conduct.

5. The Attorney General has failed to introduce sufficient evidence to establish reasonable cause to believe that TeleCheck has engaged in, or is likely to engage in, a *pattern of* [sic] *practice.*

\* \* \* \* \* \*

7. The Court finds the testimony regarding the complaints filed by Darla Hodges, Julie Cavender, and Rebecca Severino, to establish isolated incidents of: 1) deviations by TeleCheck from its accepted practices and procedures or 2) TeleCheck employees acting beyond the scope of their employment but is not sufficient to establish reasonable cause to believe TeleCheck is engaging in, or likely to engage in, a *pattern or practice* of violating the Act.

8. The fact that errors have occurred in the course of handling 48,000,000 checks in the State of West Virginia over the past four years, based on the number of complaints thus far against TeleCheck, has not established an industry *pattern and practice* of violating the Act.

\* \* \* \* \* \*

10. An allegation that a TeleCheck employee engaged in an act outside the scope of his or her employment is not enough evidence at this point in the injunctive proceedings, that TeleCheck is engaged in, or likely to engage in, a *pattern or practice* of violating the Act.

Based upon the aforementioned, the Court does hereby **DENY** the Attorney General's Motion for Preliminary Injunction. [emphasis added throughout].[2]

The Attorney General's appeal makes two basic arguments.

First, the Attorney General argues that the circuit court erroneously used a "pattern or practice" standard in the preliminary injunction context, and that we should therefore vacate the circuit court's order denying preliminary injunctive relief.

Second, the Attorney General argues that if the circuit court had applied the correct standard, a preliminary injunction should have issued. Therefore the Attorney General asks us to order the circuit court to award a preliminary injunction in accord with the Attorney General's request.

We agree with the Attorney General on the first point. On the second point, however, we conclude that further proceedings relating to *preliminary* injunctive relief would be contrary to the principle of judicial economy. Therefore, we vacate the circuit court's order and remand the case for further proceedings relating to *permanent* injunctive relief, holding that the findings and conclusions reached by the circuit court in its order denying preliminary injunctive relief are not applicable in the permanent injunction context.

## II.

### *Standard of Review*

▉ As a threshold matter, we take up Telecheck's argument that this Court does

---

2. The court's order uses the phrases "pattern *and* practice," "pattern *or* practice," and also "pattern *of* practice." We will assume that the court meant in all instances to use the phrase "pattern *or* practice." *See* discussion at note 16 *infra.*

not have jurisdiction to review the circuit court's interlocutory order denying the Attorney General's request for a preliminary injunction.[3]

 "There are numerous definitions of jurisdiction, the substance of all of which is the power to hear and determine a cause." *Johnston v. Hunter,* 40 S.E. 448, 50 W.Va. 52 (1901). "Jurisdiction is the inherent power of a court to decide a case." *West Virginia Secondary School Activities Commission v. Wagner,* 102 S.E.2d 901, 909, 143 W.Va. 508 (1958).

We have stated that:

[t]he "jurisdiction" of this Court comes from three sources—the constitution of this state; the legislature; and the common law, from which emanates some of its so-called inherent power.[4]

*State ex rel. Summerfield v. Maxwell,* 148 W.Va. 535, 539, 135 S.E.2d 741, 745 (1964).

 The scope of this Court's jurisdictional power is principally set forth in *W.Va. Const.,* art. VIII, sec. 3 [1974] (in part), which states that:

[t]he supreme court of appeals shall have original jurisdiction of proceedings in habeas corpus, mandamus, prohibition and certiorari.

The court shall have appellate jurisdiction in civil cases at law where the matter in controversy, exclusive of interest and costs, is of greater value or amount than three hundred dollars unless such value or

amount is increased by the legislature; in civil cases in equity; in controversies concerning the title or boundaries of land; in proceedings in quo warranto, habeas corpus, mandamus, prohibition and certiorari; and in cases involving personal freedom or the constitutionality of a law. It shall have appellate jurisdiction in criminal cases, where there has been a conviction for a felony or misdemeanor in a circuit court, and such appellate jurisdiction as may be conferred upon it by law where there has been such a conviction in any other court. In criminal proceedings relating to the public revenue, the right of appeal shall belong to the State as well as to the defendant. It shall have such other appellate jurisdiction, in both civil and criminal cases, as may be prescribed by law.

Under the prior version of this constitutional section,[5] we held in Syllabus Point 10 (in part) of *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963) that:

[t]he Supreme Court of Appeals has original jurisdiction in cases of habeas corpus, mandamus and prohibition and appellate jurisdiction in all other cases mentioned in Article VIII, Section 3, of the Constitution of this State and in such *additional* cases as may be prescribed by law[.] [emphasis added].[6]

This holding is in accord with our statement in *Carskadon v. Bd. of Education of*

---

3. Of course, the fact that this Court has jurisdiction that it *may* exercise does not mean that the Court *must* in a given instance exercise that jurisdiction. *See, e.g., Billotti v. Dodrill,* 183 W.Va. 48, 394 S.E.2d 32 (1990) (right to file petition for appeal does not mean that this Court must accept the case for decision on the merits); *State ex rel. Doe v. Troisi,* 194 W.Va. 28, 32, 459 S.E.2d 139, 143 (1995) ("The exercise of our original jurisdiction is discretionary and is governed by the practical circumstances of the case.").

4. *See W.Va. Const.* art. VIII, sec. 13 (incorporating the common law); *accord, W.Va.Code,* 2–1–1 [1923]; *see also* Syllabus Point 2, *Morningstar v. Black and Decker Mfg. Co.,* 162 W.Va. 857, 253 S.E.2d 666 (1979) ("Article VIII, Section 13 of the West Virginia Constitution and W.Va.Code, 2–1–1, were not intended to operate as a bar to this Court's evolution of common law principles,

including its historic power to alter or amend the common law."); *see generally,* McLaughlin, James Audley, "The Idea of the Common Law in West Virginia Jurisprudential History: *Morningstar v. Black & Decker* Revisited," 103 W. Va. L.Rev. 125 (2000).

5. The 1974 Judicial Reorganization Amendment made certain changes in the language of this section; the changes are not germane to the issues in the instant case.

6. *Compare U.S. Const.* art. 3, sec. 2., cl. 2, the "exceptions and regulations" clause, which grants Congress "limiting" power with respect to the appellate jurisdiction of the Supreme Court. *See generally* Mickenberg, Ira, "Abusing the Exceptions & Regulations Clause: Legislative Attempts to Divest the Supreme Court of Appellate Jurisdiction," 32 Am.U.L.Rev. 497 (1983).

*School Dist. of Keyser*, 61 W.Va. 468, 56 S.E. 834, 835 (1907) that:

> ... by the concluding part of [*W.Va. Const.*, art. 8, sec. 3] the Legislature is given an unlimited [7] range in creating additional appellate jurisdiction. [However, t]he Constitution defines and secures to litigants the right of review in certain cases, which the Legislature cannot abrogate or abridge. ..."

Telecheck argues that *W.Va.Code*, 58–5–1 [1998] [8] prohibits this Court from hearing the instant appeal. Because the circuit court's

ruling on the Attorney General's request for a preliminary injunction was not a "final judgment," Telecheck argues that this Court has no jurisdiction to review that ruling.

■ However, as set forth in the *Constitution* and explained in the foregoing authorities, the scope of this Court's jurisdiction is principally set forth in the *Constitution* itself, and the Legislature's power with respect to this Court's appellate jurisdiction is additive, not subtractive or restrictive.

■ "Appellate jurisdiction" is "the power of a reviewing court to correct error in

---

**7.** "Unlimited" is not accurate, strictly speaking. We have recognized that the Legislature's power to add appellate jurisdiction is limited:

> By the plain terms of the Constitution appellate jurisdiction is limited to controversies arising in judicial proceedings, and the "other appellate jurisdiction" that may be authorized must relate to "civil and criminal cases," that is some judicial proceedings begun in an inferior judicial tribunal.

*United Fuel Gas Co. v. P.S.C.*, 73 W.Va. 571, 578, 80 S.E. 931, 934 (1914). *See also Ex Parte Bornee*, 76 W.Va. 360, 85 S.E. 529 (1915) (the constitutional grant of "such other appellate jurisdiction as may be prescribed by law" did not empower the Legislature to enlarge the criminal jurisdiction of the court by permitting the state to appeal criminal convictions in violation of double jeopardy protections).

**8.** *W.Va.Code*, 58–5–1 [1998] states:

> A party to a civil action may appeal to the supreme court of appeals from a final judgment of any circuit court or from an order of any circuit court constituting a final judgment as to one or more but fewer than all claims or parties upon an express determination by the circuit court that there is no just reason for delay and upon an express direction for the entry of judgment as to such claims or parties. The defendant in a criminal action may appeal to the supreme court of appeals from a final judgment of any circuit court in which there has been a conviction or which affirms a conviction obtained in an inferior court.

In *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995), Justice Cleckley discussed former *W.Va.Code*, 58–5–1 [1925]; in that opinion, he recognized that this Court's appellate jurisdiction includes a number of jurisprudential exceptions to the "finality" principle. *Id.*, 193 W.Va. at 292–93 nn. 3 & 4, 456 S.E.2d at 19–20 nn. 3 & 4. Earlier, writing separately in *State ex rel Allen v. Bedell*, 193 W.Va. 32, 39, 454 S.E.2d 77, 84 (1994), Justice Cleckley stated that former *W.Va.Code*, 58–5–1 [1925] was "antiquated and in need of comprehensive and substantial revision" to recognize this Court's power to review interlocutory orders in some circumstances. Subsequently, in *Wheeling Park Com'n v. Hotel &*

*Restaurant Employees Int. Union*, 198 W.Va. 215, 479 S.E.2d 876 (1996) (granting appeal of preliminary injunction), Justice McHugh, writing for the Court, echoed Justice Cleckley's comments, stating that: "[u]nfortunately, W.Va.Code, 58–5–1 [1925], *et seq.*, regarding appellate relief in this Court, lacks conformity with current practice. We encourage the West Virginia legislature to examine W.Va.Code 58–5–1, et seq., and amend it recognizing that *such statutory amendments may not conflict with W.Va. Const. art VIII sec. 1, et seq.*" 198 W.Va. at 220 n. 4, 479 S.E.2d at 880 n. 4 (emphasis added). However, despite these statements, the 1998 amendment of *W.Va. Code*, 58–5–1 [1998] deleted all statutory language relating to review by this Court of interlocutory orders except for those certified as "final" under *West Virginia Rules of Civil Procedure*, Rule 54(b). Subsequently, in *Wolfe v. Welton*, 210 W.Va. 563, 558 S.E.2d 363 (2001), we held that this Court had jurisdiction to review an interlocutory order remanding a case, and that the 1998 revision of *W.Va.Code*, 58–5–1 did not control on the issue of interlocutory orders generally, and "operates only to clarify the ability to appeal civil actions in which final judgments have been entered pursuant to Rule 54(b) of the Rules of Civil Procedure, and to remove the *requirement that an appealable civil action involve any particular amount in controversy.*" 210 W.Va. at 573, 558 S.E.2d at 373. In *Foster v. Sakhai*, 210 W.Va. 716, 559 S.E.2d 53 (2001), we held that the 1998 statute's deletion of language recognizing this Court's jurisdiction to hear appeals of interlocutory orders granting new trials could not operate to proscribe the *exercise of the jurisdiction of this Court to review* such orders under our constitutional jurisdiction. We stated that *W.Va.Code*, 58–5–1 [1998] could not be read to "place a potentially unconstitutional limitation on the Court's powers." 210 W.Va. at 726, 559 S.E.2d at 53. In light of the foregoing, Telecheck cannot rely on *W.Va.Code*, 58–5–1 [1998] to support its contention that this Court has thereby been deprived of its jurisdiction to hear an appeal of an interlocutory order relating to preliminary or temporary injunctive relief.

a trial court proceeding." *Leone v. Medical Bd. of Cal.*, 94 Cal.Rptr.2d 61, 64, 22 Cal.4th 660, 666, 995 P.2d 191, 195 (2000). *West Virginia Constitution*, art. VII, sec. 3 provides that this Court has "appellate jurisdiction" over "civil cases in equity." This language does not limit this Court's power to review and correct error in cases in equity to "final judgments." Moreover, our longstanding jurisprudence is to the effect that this Court possesses discretionary appellate jurisdiction to review interlocutory lower court orders in cases in equity relating to preliminary or temporary injunctive relief.[9] *See, e.g., Hart v. NCAA*, 209 W.Va. 543, 550 S.E.2d 79 (2001) (appeal of order awarding preliminary injunction, order vacated); *Sams v. Goff*, 208 W.Va. 315, 540 S.E.2d 532 (1999) (*per curiam*) (appeal from granting of preliminary injunction; injunction held to be appropriate); *State By & Through McGraw v. Imperial Marketing*, 196 W.Va. 346, 349, 472 S.E.2d 792, 795 (1996) ("The defendant ... appeals an order of the Circuit Court of Kanawha County granting a preliminary injunction...."); *Wheeling Park Com'n v. Hotel and Restaurant Employees*, 198 W.Va. 215, 479 S.E.2d 876 (1996) (appeal of preliminary injunction restricting picketing); *Jeffer-son County Bd. of Educ. v. Jefferson County Education Ass'n.*, 183 W.Va. 15, 393 S.E.2d 653 (1990) (circuit court granted preliminary injunction against work stoppage; association appealed, injunction upheld); Syllabus Point 11, *Stuart v. Lake Washington Realty Corp.*, 141 W.Va. 627, 92 S.E.2d 891 [1956] ("... the power to grant or refuse or to modify, continue or dissolve a temporary or a permanent injunction ... will not be disturbed *on appeal* in the absence of a clear showing of an abuse of ... discretion.") (emphasis added); *Brady v. Smith*, 139 W.Va. 259, 79 S.E.2d 851 (1954) (appeal of order refusing to dissolve temporary injunction; injunction dissolved on appeal); *Huffman v. Chedester*, 126 W.Va. 73, 27 S.E.2d 272 (1943) (temporary injunction granted on filing of complaint and exhibits, answer filed, motion to dissolve denied, denial order appealed); *Winter v. State Road Com'n*, 116 W.Va. 200, 179 S.E. 73 (1935) (appeal of order dissolving temporary injunction); *O. Hommel Co. v. Fink*, 115 W.Va. 686, 177 S.E. 619 (1934) (preliminary injunction upheld on appeal); *United Fuel Gas Co. v. Morley Oil & Gas Co.*, 101 W.Va. 73, 131 S.E. 713 (1926) (appeal of decree dissolving temporary injunction, decree reversed and injunction reinstated).[10]

---

9. We explained the differences between *ex parte* temporary restraining orders ("TROs") and preliminary injunctions in *Camden–Clark Memorial Hospital v. Turner*, 212 W.Va. 752, 575 S.E.2d 362 (2002). Courts have held that both TROs and preliminary injunctions may be appealed, depending on the circumstances. *See Branch v. Bd. of Educ. of Robeson County*, 230 N.C. 505, 53 S.E.2d 455 (1949) (temporary restraining order dissolution was an appealable order because it involved a substantial right); *Taylor v. Breese*, 163 F. 678 (C.C.A.Va.1908) (appeal allowed of temporary restraining order); *Bohn Aluminum & Brass v. Barker*, 55 Ill.2d 177, 303 N.E.2d 1 (1973) (whether injunction order is characterized as a TRO or preliminary injunction, its issuance is appealable); *accord, Plant Process Equipment, Inc. v. Harris*, 579 S.W.2d 53 (Civ.App. Texas 1979).

Prior to our requirement in *Ashland Oil v. Kaufman*, 181 W.Va. 728, 384 S.E.2d 173 (1989) that notice and an opportunity to be heard must be given whenever possible to the party against whom a preliminary injunction is sought, and our 1998 adoption of the TRO procedure in *West Virginia Rules of Civil Procedure*, Rule 65, it was apparently a not uncommon practice in this State for a trial court to issue a preliminary injunction order *ex parte*—based on a complaint, exhibits, and affidavits. The merits of the pre-liminary injunction that had been granted *ex parte* would then commonly be examined for the first time in an adversarial context in a hearing on a motion to dissolve the injunction. *See, e.g., Tennant v. Kilcoyne*, 120 W.Va. 137, 196 S.E. 559 (1938) (injunction granted on sworn bill of complaint, hearing on motion to dissolve injunction held several hours later). This practice explains the inclusion in prior *W.Va.Code*, 58–5–1 [1925] of language recognizing this Court's power to review interlocutory orders related to the dissolution of preliminary injunctions, and the fact that a number of our earlier cases recognizing our jurisdiction in this area arise from rulings on motions to dissolve injunctions—motions which now seem to be relatively rare, in light of modern rules and practice providing for contested hearings whenever possible before any decision regarding preliminary injunctive relief is made.

10. Additionally, *West Virginia Rules of Civil Procedure*, Rule 52, requires findings of fact and conclusions of law when a court is "granting or refusing preliminary injunctions;" one purpose of this requirement is to permit proper appellate review. *Cf. also W.Va.Code*, 53–5–8 [1955] (in part) ("Questions may be certified and appeals may be taken in injunction proceedings as in any other cases in equity.").

In addition to the exercise of our discretionary appellate jurisdiction to review interlocutory orders regarding preliminary or temporary injunctive relief, this Court has also on occasion reviewed such orders in considering petitions seeking writs of prohibition. *See, e.g., State ex rel. U.M.W.A. Local 1938 v. Waters,* 200 W.Va. 289, 489 S.E.2d 266 (1997) (prohibition to review court's grant of preliminary injunction); *Truby v. Broadwater,* 175 W.Va. 270, 332 S.E.2d 284 (1985) (prohibition granted requiring dissolution of preliminary injunction); *Ashland Oil v. Kaufman,* 181 W.Va. 728, 384 S.E.2d 173 (1989) (writ of prohibition granted to stop enforcement of preliminary injunction).[11]

Moreover, the contention by Telecheck that this Court cannot review the circuit court's decision regarding preliminary injunctive relief in the instant case flies in the face of fundamental fairness and common sense. For what if the circuit court *had* decided to preliminarily enjoin Telecheck in such a fashion that the company believed it could not reasonably conduct its business in West Virginia? In such a case, there can be little doubt that Telecheck would be before this Court within days (if not hours), asking that we stay and reverse the circuit court's

action. And in such a case, it may be confidently predicted that Telecheck would vigorously resist any suggestion by the Attorney General that the fact that the preliminary injunction was not a "final judgment" per *W.Va.Code,* 58–5–1 [1998] would preclude our review of the order granting preliminary injunctive relief.

This hypothetical situation illustrates why the issue of this Court's exercise of its discretionary jurisdiction to review orders regarding preliminary or temporary injunctive relief is not simply a technical nicety, or an arcane procedural aspect of the role of the judicial branch. If this Court did not have the power to review such orders, the potential power of a circuit court to unfairly wreak hardship on a party would be almost entirely unchecked. Nothing in our jurisprudential history suggests that such a situation is or should be the case. Moreover, this Court's jurisdiction to review such orders importantly advances the public policy set forth at *W.Va. Const.,* art. III, sec. 17, guaranteeing that "[t]he Courts of this State shall be open . . .," and makes meaningful the fundamental fairness and due process of law that is guaranteed by *W.Va. Const.,* art. III, sec. 10—

"Numerous state courts have held that orders granting . . . denying, dissolving, or refusing to dissolve temporary or preliminary injunctions are appealable . . . [as are] orders that modify, amend, or refuse to amend temporary injunctions." 42 Am.Jur.2d *Injunctions* Sec. 329 (citations omitted).

11. Although we ordinarily speak of this Court's "original jurisdiction" in connection with our constitutional power to issue writs of prohibition, one court has stated that in reviewing the action of a lower judicial tribunal, "the issuance of such a writ is not, strictly speaking, an exercise of original jurisdiction, for it issues only after a suit has been entered in an inferior court . . . * * * [while it does not] constitute an exercise of purely original jurisdiction no more can it be said to be an exercise of appellate jurisdiction; it is, however, a means by which a court protects its appellate jurisdiction [.] * * * The historic use of writs of prohibition and mandamus directed by an appellate to an inferior court has been to exert the revisory appellate power over the inferior court." *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 98, 61 A.2d 426, 428 (1948). *See also Leone v. Medical Bd., supra* (stating that "appellate jurisdiction" to correct errors by lower courts includes the use of supervisory writs and not just direct appeals).

Whether a request for review by this Court of a circuit court's interlocutory order regarding injunctive relief is styled as a petition for appeal or as a request for a writ of prohibition may or may not have practical significance in a given case. However, the different principles and procedures associated with the two forms of review roughly correspond to the different issues that tend to be associated with the two kinds of review. In prohibition, this Court proceeds in a more expedited fashion and on a record limited to the pleadings presented; whereas upon the granting of a petition for appeal, a record on appeal is prepared, and the procedure ordinarily takes longer. Where the issues are largely ones of law and clearly erroneous actions of the court below are asserted, prohibition may be a more appropriate method to seek review of an interlocutory determination regarding injunctive relief. But where a substantial factual record is present, or where the issues for review are more nuanced and fact-driven—such as a lower court's exercise of its discretion in balancing the equities—then the route of appeal may be more appropriate. In either case, this Court has the discretion to *not* exercise its jurisdiction to review the lower court's action. And our disfavoring of "piecemeal" review of the actions of lower courts remains a strong jurisprudential principle.

thereby protecting all of the other rights, protections, and privileges that are afforded by our *Constitution* and statutory and common law.[12]

■ Therefore, based on the foregoing discussion, we hold that *West Virginia Constitution,* article VIII, section 3, which grants this Court appellate jurisdiction of civil cases in equity, includes a grant of jurisdiction to hear appeals from interlocutory orders by circuit courts relating to preliminary and temporary injunctive relief.[13] Telecheck's argument that this Court does not have juris-

diction to undertake appellate review of the circuit court's order denying the Attorney General's request for a preliminary injunction is not meritorious.

The statute governing the issuance of preliminary injunctions under the WVCCPA in cases brought by the Attorney General, is *W.Va.Code,* 46A–7–110 [1974]:

> With respect to an action brought to enjoin violations of this chapter or unconscionable agreements or fraudulent or unconscionable conduct, the attorney general may apply to the court for appropriate

**12.** This Court's discretionary jurisdiction to review interlocutory orders in areas other than injunctive relief is also well-established—although sparsely exercised, in view of the need to preserve judicial economy and avoid piecemeal litigation. *See State ex rel. Charles Town General Hosp. v. Sanders,* 210 W.Va. 118, 556 S.E.2d 85 (2001) (discovery order); *State ex rel Clark v. Blue Cross Blue Shield of W.Va., Inc.,* 203 W.Va. 690, 510 S.E.2d 764 (1998) (liquidation proceeding order); *State ex rel. Moore v. Canterbury,* 181 W.Va. 389, 382 S.E.2d 583 (1989) (per curiam) (order reinstating case for trial); *McFoy v. Amerigas,* 170 W.Va. 526, 295 S.E.2d 16 (1982) (orders relating to class action standing); *Slater v. Slater,* 118 W.Va. 645, 191 S.E. 524 (1937) (decree awarding *pendente lite* alimony); *State ex rel. Doe v. Troisi,* 194 W.Va. 28, 459 S.E.2d 139 (1995) (order denying motion to quash subpoena); *Mitchem v. Melton,* 167 W.Va. 21, 30, 277 S.E.2d 895, 900 (1981) (order regarding class action standing; stating that this Court has taken a "liberal view of when an order is appealable," especially when an interlocutory order "affects substantial rights"); *Parsons v. McCoy,* 157 W.Va. 183, 202 S.E.2d 632 (1973) (order setting aside default judgment).

**13.** The Attorney General also contends that this Court's jurisdiction to review orders relating to injunctive relief is supported by *W.Va.Code,* 53–5–5 [1923], which states as follows:

> When a circuit court, or a judge thereof, shall refuse to award an injunction, a copy of the orders entered in the proceedings in court, and the original papers presented to the court or to the judge in vacation with his order of refusal, may be presented to the supreme court of appeals, or a judge thereof in vacation, who may thereupon award the injunction.

In light of the Attorney General's contention, this statute requires some discussion. In *Mayo v. Haines & Coutts,* 16 Va. 423 (2.Munf.1811), the Virginia Court of Appeals held that under a similar Virginia statute that carried over into *W.Va. Code,* 53–5–5 [1923], a judge or judges who were members of the court of appeals could grant an injunction—but in doing so they would be acting with the same status as circuit judges—and not

as the superior or supervisory court of appeals. In *Lewis v. Asseff,* 142 W.Va. 670, 97 S.E.2d 289 (1957), this Court agreed with the distinction that was made in *Mayo*—holding that a trial court could theoretically dissolve a temporary injunction awarded pursuant to the procedure set forth in *W.Va.Code,* 53–5–5. 142 W.Va. at 675, 97 S.E.2d at 292. In *Lewis,* we quoted approvingly from *Nichols v. Central Virginia Power Co.,* 143 Va. 405, 130 S.E. 764 (1925) as follows: "[When] an injunction [is] granted by one of the judges of the Supreme Court of Appeals [under the Virginia equivalent of *W.Va. Code,* 53–5–5, the judge] acts not in an appellate capacity, but as a judge of another court of coordinate jurisdiction." *Id.* A separate opinion in *Lewis* by Judge Browning agreed with the majority opinion's conclusion that "an injunction granted by the appellate court, or a judge thereof in vacation, was of the same effect as a temporary injunction granted by a trial chancellor." 142 W.Va. at 679, 97 S.E.2d at 294. Our more recent cases mentioning *W.Va.Code,* 53–5–5 [1923] have apparently not had occasion to discuss the underlying basis for the original jurisdiction that has been exercised pursuant to the procedure set forth in that statute. *See, e.g., Wheeling Park Com'n v. Hotel and Restaurant Employees, Intern. Union, AFL–CIO,* 198 W.Va. 215, 479 S.E.2d 876 (1996). The explicit constitutional grant of original jurisdiction to this Court in *W.Va Const.,* art. VIII, sec. 8 does not include injunctions, nor is the Legislature explicitly empowered to make additional grants of original jurisdiction. However, because procedures for the exercise of this jurisdiction have been recognized in Virginia and West Virginia for at least 200 years, it can be fairly seen as arising from the inherent common law power of the judges of the state's supreme court—a power that we have recognized as one of the sources of our jurisdiction, *see* note 4 *supra, State ex rel. Summerfield v. Maxwell, supra.* In any event, we conclude that the original jurisdiction in injunction that is recognized in *W.Va.Code,* 53–5–5 [1923] is not germane to the issue of our appellate power to review the circuit court's action in the instant case.

temporary relief against a respondent, pending final determination of the proceedings. If the court finds after a hearing held upon notice to the respondent that there is reasonable cause to believe that the respondent is engaging in or is likely to engage in conduct sought to be restrained, it may grant any temporary relief or restraining order it deems appropriate.[14]

■ In Syllabus Point 1 of *State v. Imperial Marketing*, 196 W.Va. 346, 472 S.E.2d 792 (1996), we stated:

In reviewing the exceptions to the findings of fact and conclusions of law supporting the granting of a temporary or preliminary injunction, we will apply a three-pronged deferential standard of review. We review the final order granting the temporary injunction and the ultimate disposition under an abuse of discretion standard, *West v. National Mines Corp.*, 168 W.Va. 578, 590, 285 S.E.2d 670, 678 (1981), we review the circuit court's underlying factual findings under a clearly erroneous standard, and we review questions of law de novo. Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996).[15]

With these standards in mind, we consider the parties' arguments.

### III.

#### *Discussion*

As discussed in I. *supra*, the Attorney General alleged that conduct by Telecheck was in violation of *W.Va.Code*, 46A–6–104 [1974], which provides that:

Unfair methods of competition and unfair or deceptive acts or practices [UDAPS] in the conduct of any trade or commerce are hereby declared unlawful.

*W.Va.Code*, 46A–6–101 [1974] provides that the provisions of 46A–6–104 shall be "liberally construed ... however, [it] shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest ...." *See generally, McFoy v. Amerigas, Inc.*, 170 W.Va. 526, 295 S.E.2d 16 (1982). We have stated that:

The purpose of the [WV]CCPA is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action.

*State ex rel. McGraw v. Scott Runyon Pontiac–Buick*, 194 W.Va. 770, 777, 461 S.E.2d 516, 523 (1995).

■ In accordance with *W.Va.Code*, 46A–7–110 [1974], the issue before the circuit court was whether there was reasonable cause to believe that Telecheck was engaging in or was likely to engage in unfair or deceptive acts or practices as alleged by the Attorney General. If the trial court found such reasonable cause, then the court had grounds for issuance of an appropriate injunction. *See* Syllabus Point 2, *State v. Imperial Marketing*, 196 W.Va. 346, 472 S.E.2d 792 (1996).

However, instead of applying this standard, the circuit court predicated its decision on the issue of whether the Attorney General had proved a "pattern or practice" of improper conduct by Telecheck.

Although the phrase "pattern or practice" permeates the circuit court's order, that phrase does *not* appear in the WVCCPA, nor does our research show that it is commonly used in the area of consumer protection or trade regulation law. The phrase "pattern or practice" is used, *inter alia*, in the area of discrimination law. *See generally*, Words and Phrases, "Pattern or Practice." In this

---

**14.** *See SEC v. Torr*, 87 F.2d 446 (2d Cir.1937) (test for injunction in trade regulation case is whether defendants are engaged or about to engage in actions prohibited by statute); *accord, Henderson v. Burd*, 133 F.2d 515 (2d Cir.1943). *See also Evergreen Collectors v. Holt*, 60 Wash. App. 151, 803 P.2d 10 (1991) (conduct that violated standards set by debt collection act was an unfair or deceptive trade practice).

**15.** In the instant case, of course, we are reviewing a court's decision *not* to grant a preliminary injunction, but we see no reason why the foregoing standard of review should not be applicable to this decision as well.

area of the law, showing a "pattern or practice" of certain conduct or conditions means showing that the conduct or conditions are regular, repeated, or intentional—as opposed to instances of the conduct or conditions being merely isolated and accidental. Proof of a "pattern or practice" in this context may then permit a finding of a discriminatory animus, or the award of systemic relief, etc. *See, e.g., Greyhound Lines–East v. Geiger,* 179 W.Va. 174, 179, 366 S.E.2d 135, 140 (1988); *Bloss & Dillard v. Human Rights Commission,* 183 W.Va. 702, 704, 398 S.E.2d 528, 530 (1990); *U.S. v. Hunter,* 459 F.2d 205 (4th Cir.1972).[16]

The closest statutory language in the WVCCPA to "pattern or practice"—that is, the closest in meaning, not in words—is found in *W.Va.Code,* 46A–7–111 [1999]. This section provides that a civil penalty may be imposed for each violation of the WVCCPA "if the court finds that the defendant has engaged in *a course of repeated and willful violations* of this chapter."

 Under the statutory scheme of the WVCCPA, the "course of repeated violations" test is not applicable in the preliminary injunctive context—but is rather to be used, if at all, only after a final judgment has been made that there have been in fact violations of the WVCCPA. Then, if the evidence shows that the violations were not simply isolated and accidental instances of illegal conduct, a monetary penalty may be imposed. Telecheck has not cited us to any case in which a "pattern or practice," or even a "course of repeated and willful violations" standard has been applied in a consumer protection case in the preliminary injunction context; and our research has not identified any such case.

Insofar as we can determine from the voluminous record, the Attorney General did not use the phrase "pattern or practice" in his pleadings or arguments, and Telecheck has not cited us to any such instance. To the contrary, the record shows that it was Telecheck that asserted—as essentially the core of its defense to the Attorney General's request for preliminary injunctive relief—the argument that the Attorney General had to prove a "pattern or practice."[17] In ruling on the Attorney General's request for a preliminary injunction, then, the circuit court used a standard that was introduced and advocated for by Telecheck.[18]

**16.** *See also, e.g., W.Va.Code,* 5–11A–15(a) [1992] (W.Va. Fair Housing Act):

Whenever the attorney general has reasonable cause to believe that any person or group of persons is engaged in a *pattern or practice* of resistance to the full enjoyment of any of the rights granted by this article, or that any group of persons has been denied any of the rights granted by this article and such denial raises an issue of general public importance, the attorney general may commence a civil action in any appropriate circuit court. [emphasis added.]

The phrase "pattern and practice" has been used in lawyer disciplinary cases, *see Lawyer Disciplinary Board v. Sims,* 212 W.Va. 463, 469, 574 S.E.2d 795, 801 (2002); and in the West Virginia Lawyer Disciplinary Rules, *see* Bar Rules and Regulations Ch. 3, Chapter III, Rule 15, Procedure for Committees on Legal Ethics, Unlawful Practice and for Grievances:

Additionally, where in the discretion of the Investigative Panel such action is warranted, cases closed within the past five years because they concerned isolated errors of judgment or negligence or malpractice, may be reopened for inclusion in a pattern and practice count against the attorney concerned.

**17.** Telecheck's counsel began his presentation in opposition to the request for a preliminary injunction by saying that the "complaints that the Attorney General has received … upon which they base their allegation that it's a pattern and practice of behavior … [were not numerous enough …] That's not a pattern and practice by anyone's definition." We note that Telecheck also vigorously disputed whether some of the conduct alleged by the Attorney General had *ever* occurred, and asserted that some other conduct, if it had occurred, was only an isolated incident or the result of a technical slip-up. On the other hand, Telecheck did not dispute that some of the conduct that was alleged by the Attorney General was a standard or regular occurrence, although Telecheck did vigorously dispute that such conduct was illegal. The circuit court's order did not address a number of the specific types of conduct alleged by the Attorney General, *see* note 20 *infra.*

**18.** Telecheck additionally argues that the court's use of the standard may be defended because the Attorney General asserted in his complaint that each of the types of alleged conduct by Telecheck that were separately identified in the complaint was an "unfair or deceptive act or practice." However, this allegation was made—for each type of allegedly illegal conduct—only as a conclusory recitation of the statutory language, *W.Va.Code,* 46A–6–104 [1974] (*i.e.,* "conduct XYZ

Based on the foregoing discussion, we hold that the statutory standard for issuing a preliminary injunction under *W.Va.Code*, 46A–7–110 [1974]—whether "there is reasonable cause to believe that the respondent is engaging in or is likely to engage in conduct [prohibited by Chapter 46A]"—does not include the requirement that there first be proved a "pattern or practice" of violations of the statute.[19] We conclude that the circuit court erred in hinging its decision on a "pattern or practice" standard.[20]

## IV.

### Conclusion

Inasmuch as this action was filed in the year 2000, and a significant record has already been made, we conclude that remanding for a *de novo* proceeding on preliminary relief would be wasteful of judicial resources. The order of the circuit court regarding preliminary injunctive relief is vacated and reversed, and this case is remanded for proceedings on the merits of permanent injunctive relief.[21]

Order Vacated, Remanded.

Justice DAVIS concurs.

Justice MAYNARD concurs.

DAVIS, J., concurring, in part, and dissenting, in part.

In this case, the state Attorney General, Darrell V. McGraw, Jr., appealed from a circuit court order denying his request for a preliminary injunction against Telecheck Services, Inc. Prior to actually addressing its merits, the majority opinion examined Telecheck's contention that this Court had no jurisdiction to hear an appeal from an order denying a preliminary injunction. The majority opinion rejected Telecheck's jurisdictional argument and concluded that the Court has jurisdiction to hear an appeal from an order denying a preliminary injunction. I concur in the majority resolution of the jurisdictional challenge.

---

is an unfair or deceptive act or practice"). A common meaning of the word "practice" is a "habitual action or performance." *Oxford Desk Dictionary and Thesaurus*, American Edition 1997. The use of the disjunctive term "or" to separate "act" and "practice" in *W.Va.Code*, 46A–6–104 [1974] (and in the Attorney General's complaint) means that proving violation of *W.Va. Code*, 46A–6–104 [1974] may be done by proving an illegal "act," without necessarily also proving an illegal "practice."

**19.** The Attorney General also challenges the propriety of the circuit court's conclusion in its order to the effect that any conduct by Telecheck that might have violated the WVCCPA was the result of "bona fide errors." *W.Va.Code*, 46A–5–101(8) [1974] provides that certain conduct may not violate the WVCCPA if the conduct was the result of a "bona fide error of fact notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation or error...." *Id.* Because of the location of this defense in the relatively complex scheme of the WVCCPA, the applicability *vel non* of this section to Telecheck and the UDAP claims made by the Attorney General against it is unclear, and we make no ruling on that issue. In any event, this is a defense that is relevant only after a finding that conduct that would otherwise be a violation has occurred, which was not done in this case. Moreover, this is a defense that by its own terms *does not include errors or mistakes of law* re-

garding the requirements or applicability of consumer protection laws. *See, e.g., Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22 (2d Cir. 1989).

**20.** The circuit court also did not make any findings about whether much of the specific conduct alleged by the Attorney General had occurred or was likely to occur, or whether it constituted illegal, unfair or deceptive conduct. Because the *circuit court did not rule on these issues, they are not before us.* We observe that Telecheck appears to provide a valuable commercial service by permitting businesses to accept personal checks without undue burden or risk. However, consumers clearly have a right to be protected from unfairness in the dissemination of information about their credit-worthiness, which includes information about whether their checks are good. *Additionally, in the heavily regulated area of debt collection,* conduct like that alleged by the Attorney General—including adding improper charges, misleading letters, double-collecting, and withdrawing funds without verifiable permission to do so—is also clearly a proper subject of UDAP scrutiny.

**21.** To be perfectly clear: this Court is not acting to grant any form of preliminary injunctive relief. Our instructions to the lower court are to not conduct any further proceedings relating to preliminary relief, but to proceed to the permanent injunction stage.

However, when reviewing the issue presented on appeal, the majority opinion concluded that the circuit court applied the wrong legal standard. The majority opinion, through a terse statement in footnote 21, has tossed aside the issue presented on appeal and remanded the case for a proceeding on the claim for a permanent injunction. I believe that the majority opinion incorrectly analyzed the law and facts of this case. For the reasons set out below, I dissent.

### A. The Circuit Court Found Insufficient Evidence of Deceptive Practices

Under W. Va.Code § 46A–6–104, the Attorney General had to present some evidence that Telecheck engaged "in unfair or deceptive acts or practices[.]" The circuit court found the evidence presented did not prove to be an unfair or deceptive "pattern or practice." The majority opinion found that, in using the phrase "pattern or practice" in its order, the circuit court applied the wrong legal standard. According to the majority opinion, the circuit court should have determined whether there was evidence that Telecheck engaged "in unfair or deceptive acts or practices[.]" The majority has made a distinction where there simply is none.

"[T]he terms 'pattern' and 'practice' have common meanings. 'Pattern' is defined as 'a regular, mainly unvarying way of acting or doing,' and 'practice' is defined as 'a frequent or usual action; habit; usage.'" *State v. Russell*, 69 Wash.App. 237, 848 P.2d 743, 750 (1993) (quoting Webster's New World Dictionary 1042, 1117 (1976)). In other words, under their common meanings, the terms pattern and practice are interchangeable. That being true, it becomes quite evident that the majority opinion is disingenuous in its attempt to show that the circuit court applied the wrong legal standard.

Had the majority attempted to be "fair" in this case, it would have reasoned that the term "pattern" was harmless surplusage. Unfortunately, the majority opinion was determined to reach a predestined outcome. Consequently, the majority opinion welded the phrase "pattern and practice" together to show that it is not found in the applicable statute. Although the term "pattern" was not in the statute, the word "practice" was used dispositively in the statute. Therefore, the circuit court's order should have been construed to mean that there was insufficient evidence of an unfair or deceptive act or "practice"; and there was insufficient evidence of an unfair or deceptive act or "pattern" with the latter being surplusage.

### B. The Majority's Disposition is Illogical and Legally Wrong

Even if I agreed with the majority opinion that the circuit court's use of the phrase "pattern or practice" was fatal, I would not join the disposition of the case chosen by the majority.

The Attorney General sought specific relief from this Court. The Attorney General sought to have this Court find that it provided sufficient evidence to warrant a preliminary injunction, and therefore this Court should grant that relief. See Franklin D. Cleckley, et al., Litigation Handbook on West Virginia Rules of Civil Procedure, 1020 (2002) ("[W]hen a circuit court refuses to award a preliminary injunction ... the Supreme Court may, *upon a proper showing,* award a preliminary injunction."). (Emphasis added.) Alternatively, the Attorney General sought to have this Court reverse and remand the case for another hearing on the preliminary injunction request under the purported correct legal standard.

The majority opinion, in an unprecedented manner, has determined that the issue of the preliminary injunction can be by-passed, and the trial court should proceed directly to the issue of a permanent injunction. This relief, which was not requested (indeed until the decision in this case no attorney could have imagined seeking such relief), is illogical and has no basis in law. I have not discovered any case in the annals of Anglo–American jurisprudence, wherein an appellate court has sua sponte stripped a litigant of the right to have a hearing on a request for a preliminary injunction, and ordered the case to proceed directly to the permanent injunction

proceeding.[1]

Obviously, the majority opinion had a definite reason for by-passing the preliminary injunction hearing in this case. That reason is veiled in the following language from the majority opinion: "a significant record has already been made, we conclude that remanding for a de novo proceeding on preliminary relief would be wasteful of judicial resources." In other words, the Attorney General had a huge bite at the apple and failed. Therefore, the majority decided to simply *assist* the Attorney General by leaving the preliminary injunction issue unresolved and ordering the parties to litigate the permanent injunction issue. This is a disingenuous disposition.

The majority's decision to turn logic and the law upside down was necessary because, even *under the so-called correct legal standard,* the Attorney General would have been denied a preliminary injunction on remand. That is, there were absolutely *no facts in the* "significant record" that properly showed the Attorney General had established evidence of Telecheck *having engaged in improper practices.* This point triggers language contained

in Rule 65(a)(2). Under Rule 65(a)(2) "any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial." Cleckley, Litigation Handbook on West Virginia Rules of Civil Procedure, at 1022–1023. As a result of the majority's disposition, technically there has been no preliminary injunction hearing. Consequently, Telecheck cannot rely on Rule 65(a)(2) and avoid having to reprove issues that were already proven in the preliminary injunction proceeding that was tossed aside by the majority.

In view of the foregoing, I concur, in part, and dissent, in part. I am authorized to state that Justice Maynard joins me in this separate opinion.

---

**1.** Instead of by-passing the preliminary injunction issue, the majority could have required the issue to be disposed of under Rule 65(a)(2) of the West Virginia Rules of Civil Procedure. "Under Rule 65(a)(2) a trial court is given discretion to, sua sponte or upon a request by the parties, order the trial of the action on the merits to be advanced and consolidated with the hearing of the application for a preliminary injunction."

Cleckley, Litigation Handbook on West Virginia Rules of Civil Procedure, at 1023. In other words, to be logical and legally sound, the majority opinion could have concluded that the issue of a preliminary injunction should be consolidated with the permanent injunction issue. Instead, the majority threw out logic and Rule 65(a)(2), and ordered the preliminary injunction claim be tossed in the trash can.