550 S.E.2d 79

**Jeremy M. HART, Plaintiff Below, Appellee,**

v.

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION; the Southern Conference; and Appalachian State University, Defendants Below,**

**National Collegiate Athletic Association and the Southern Conference, Appellants.**

No. 28887.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 6, 2001.

Decided June 18, 2001.

Nancy C. Hill, Esq., Winter Johnson & Hill, PLLC, Ancil G. Ramey, Esq., Steptoe & Johnson, PLLC, Charleston, Linda J. Salfrank, Esq., Jonathan F. Duncan, Esq., Blackwell Sanders Peper Martin, LLP, Kansas City, Missouri, for the Appellants.

David S. Hart, Esq., Abrams & Byron, Beckley, West Virginia, Attorney for the Appellee.

Thomas E. McHugh, Esq., Allen, Guthrie & McHugh, Charleston, for Amici Curiae, USA Wrestling; National Wrestling Coaches Association; and Amateur Athletic Union (AAU).

PER CURIAM:

The appellants herein and defendants below, the National Collegiate Athletic Associa-

tion[1] [hereinafter referred to as the "NCAA"] and the Southern Conference[2] [hereinafter referred to as the "SoCon"],[3] appeal an injunctive order entered by the Circuit Court of Raleigh County on January 8, 2001. This preliminary injunction was awarded following the request for such relief by the appellee herein and plaintiff below, Jeremy M. Hart [hereinafter referred to as "Hart"], who is a fifth-year senior student athlete at Appalachian State University [hereinafter referred to as "ASU"] in Boone, North Carolina. Pursuant to this ruling, the circuit court ordered the NCAA and the SoCon to allow Hart to compete in NCAA Division I[4] intercollegiate wrestling contests during the 2000–2001 academic year. On appeal to this Court, the appellants contest the circuit court's conclusion that Hart is entitled to an additional year of eligibility. Upon a review of the appellate record, the parties' arguments, and the pertinent authorities, we conclude that Hart was not entitled to injunctive relief. Because we find that the Circuit Court of Raleigh County abused its discretion, we vacate its order awarding a preliminary injunction.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts giving rise to the instant appeal are largely undisputed by the parties. In August, 1996, Hart, a native of Raleigh County, West Virginia, began his collegiate studies at Appalachian State University in Boone, North Carolina. Integral to Hart's decision to attend this institution was the college's offer of scholarship monies to him if he agreed to be a member of the school's wrestling team. Although Hart had wrestled at the 130 lb. and 135 lb. weight classes during the spring of 1996, by August of that year his weight had risen to approximately 154 lbs. Fulfilling his scholarship obligation and his personal desire to compete in intercollegiate wrestling contests, Hart became a member of the ASU wrestling team during the 1996–1997 season,[5] competing in the 134 lb. weight class. At approximately the same time, ASU was recruiting another wrestler, Erik Smith [hereinafter referred to as "Smith"], who coincidentally also competed in the 134 lb. weight division.

The following year, ASU renewed its scholarship to Hart. ASU wrestling coaching staff decided to have Hart compete in the 134 lb. class during the fall of 1997 because Smith's academic difficulties precluded him from competing. The coaches then planned to replace Hart with Smith at the 134 lb. level in early 1998, and to have Hart lose weight and compete in the 126 lb. division. During the fall of 1997, however, three collegiate wrestlers at different colleges around the country died as a result of rapid weight loss designed to help them "make weight" so that they could compete in lower weight classes. As a result of these tragedies, the NCAA promptly adopted policies and procedures to govern the remainder of the 1997–1998 wrestling season in an attempt to prevent further harm to such athletes. At issue to the instant appeal was the regulation which provided that, during the spring of 1998, a collegiate wrestler could compete only in those weight classes in which he had

1. The circuit court describes the National Collegiate Athletic Association (NCAA) as "a voluntary, unincorporated association of over 1,200 members consisting of colleges and universities, conferences and associations and other educational institutions. NCAA legislation, adopted by representatives of member institutions, governs the conduct of the athletic programs of member institutions."

2. In its order awarding injunctive relief, the circuit court defines the Southern Conference (SoCon) as "a voluntary association of both private and public educational institutions. The Southern Conference consists of twelve members in five states and sponsors nineteen varsity sports.

It abides by NCAA policies and regulations and does not have an independent set of eligibility rules applicable to the sport of wrestling."

3. For ease of reference, the NCAA and the SoCon will hereinafter be collectively referred to as "the appellants".

4. Appalachian State University (ASU) is a member of Division I of the NCAA and the SoCon.

5. The NCAA wrestling season runs from November through the following March. In November, open tournaments are held; conference competitions commence in January; and in March, the conference and national contests are held.

competed on or before January 7, 1998, unless he received a waiver from such requirement. This policy affected five wrestlers on the ASU team, including Hart. Each of these young men applied for an exemption from this regulation, with four of the five being granted such a waiver.[6] Hart, however, was denied permission to compete in the 126 lb. category. Thereafter, Hart filed numerous appeals of this decision with the NCAA. Ultimately, ASU coaches allowed Smith to represent ASU in the 134 lb. weight class for the remainder of the 1997–1998 season, with Hart being effectively precluded from competition.

Hart subsequently returned to ASU during the 1998–1999 and 1999–2000 academic years and competed on the ASU wrestling team.[7] During each of these athletic seasons, Hart competed in the 141 lb. division. At the end of the 1999–2000 season, however, Hart had exhausted his four years of wrestling eligibility dictated by the NCAA guidelines.[8] Despite the numerous appeals of his waiver denial in 1998 and his subsequent efforts to obtain an additional year of eligibility so that he could compete during the 2000–2001 season, the NCAA refused to award Hart the requested relief. Hart then filed the instant proceeding in the Circuit Court of Raleigh County, on October 31, 2000, against the NCAA, the SoCon, and ASU alleging breach of contract and requesting a preliminary injunction and declaratory judgment in his favor to allow him to compete in intercollegiate wrestling contests during the spring of 2001. By order entered January 8, 2001, the circuit court awarded Hart a preliminary injunction. The NCAA and the SoCon now appeal the lower court's ruling to this Court.

## II.

### STANDARD OF REVIEW

The issue on appeal to this Court concerns the propriety of the circuit court's order awarding injunctive relief to Hart.

Typically, we apply a tripartite standard when reviewing the correctness of a preliminary injunction.

In reviewing the exceptions to the findings of fact and conclusions of law supporting the granting of a temporary or preliminary injunction, we will apply a three-pronged deferential standard of review. We review the final order granting the temporary injunction and the ultimate disposition under an abuse of discretion standard, *West v. National Mines Corp.*, 168 W.Va. 578, 590, 285 S.E.2d 670, 678 (1981), we review the circuit court's underlying factual findings under a clearly erroneous standard, and we review questions of law de novo. Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996).

Syl. pt. 1, *State v. Imperial Mktg.*, 196 W.Va. 346, 472 S.E.2d 792 (1996). *Accord State ex rel. United Mine Workers of America, Local Union 1938 v. Waters*, 200 W.Va. 289, 296, 489 S.E.2d 266, 273 (1997). To ascertain whether the issuing court has abused its discretion in granting the requested injunctive relief, we further consider the circumstances of the particular case that have influenced the court's decision.

The granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ.

Syl. pt. 4, *State ex rel. Donley v. Baker*, 112 W.Va. 263, 164 S.E. 154 (1932). More specifically,

"[u]nder the balance of hardship test the [lower] court must consider, in 'flexible interplay,' the following four factors in determining whether to issue a preliminary

---

**6.** Unlike Hart, each of these four wrestlers had competed, during the previous year, in the weight class for which they sought the exemption.

**7.** ASU provided financial assistance to Hart during this period.

**8.** Hart represents that, at the end of the 1999–2000 season, he was predicted to be an NCAA All-American wrestler during the 2000–2001 season. In the proceedings before the circuit court, Hart claimed that these achievements had been his lifelong dream since early childhood.

injunction: (1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest."

*Jefferson County Bd. of Educ. v. Jefferson County Educ. Ass'n,* 183 W.Va. 15, 24, 393 S.E.2d 653, 662 (1990) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,* 756 F.2d 1048, 1054 (4th Cir.1985) (citation omitted)) (additional citations omitted). With these standards in mind, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

Often in the course of our juridical endeavors there arise cases that, for one reason or another, are unduly difficult to resolve. It has often been said of such decisions that "hard cases make bad law." The present proceeding is no exception to this rule. While, as we will explain below, we find the ultimate outcome to be clearly dictated by the governing law, the factual posture of this case has been most troubling. On the one hand, we have a young man who, unlike so many of his wayfaring counterparts who come before this Court on charges of illegal criminal activity, seeks this Court's assistance to accomplish his commendable ambition to succeed and to achieve his noble goal of simply being the best collegiate wrestler in the country. On the other hand are two organizations committed to safeguarding the health and well-being of student athletes, such as our young appellee, and his teammates who, themselves, have similar dreams of greatness. When all factors have been weighed on the scales of justice, though, this Court remains constitutionally bound to follow the guiding precedents before us, to apply the law as it has been interpreted by our predecessors, and to reach the result prescribed thereby. With this having been said, we proceed to consider the parties' arguments.

On appeal to this Court, the NCAA and the SoCon challenge the circuit court's ruling whereby it granted Hart a preliminary injunction to enable him to compete in intercollegiate wrestling matches during the 2000–2001 academic year despite his being ineligible to participate in such contests for a fifth season. In support of their contentions, the appellants assert that Hart has failed to satisfy the criteria requisite to an award of injunctive relief. Hart denies that the circuit court erred and maintains that he was entitled to the relief awarded to him by that tribunal.[9]

Before addressing the merits of the instant appeal, we necessarily must discuss the present procedural posture of this case. Although there existed a true controversy befitting judicial intervention when this case was originally submitted for our consideration, now, at the present time of decision, the injunctive issue raised in this appeal has become moot as the contests in which Hart sought to compete have already transpired and his graduation from Appalachian State University has become a *fait accompli.*

Generally, we have observed that " '[m]oot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court.' Syllabus Point 1, *State ex rel. Lilly v. Carter,* 63 W.Va. 684, 60 S.E. 873 (1908)." Syl. pt. 5, *West Virginia Educ. Ass'n v. Consolidated Pub. Ret. Bd.,* 194 W.Va. 501, 460 S.E.2d 747 (1995). Nevertheless, the simple fact of apparent mootness, in and of itself, does not automatically preclude our consideration of this matter.

" 'A case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review.' Syllabus point 1, *State ex rel. M.C.H. v. Kind-*

---

9. At this juncture, we wish to note the appearance of amici curiae, USA Wrestling, National Wrestling Coaches Association, and Amateur Athletic Union (AAU), in this proceeding. We appreciate their participation in this case and will consider their arguments in conjunction with those of the appellants, whose position they support.

*er,* 173 W.Va. 387, 317 S.E.2d 150 (1984)." Syllabus point 2, *State ex rel. Davis v. Vieweg,* 207 W.Va. 83, 529 S.E.2d 103 (2000).

Syl. pt. 2, *State ex rel. Jeanette H. v. Pancake,* 207 W.Va. 154, 529 S.E.2d 865 (2000). Guiding our analysis,

> [t]hree factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

Syl. pt. 1, *Israel v. West Virginia Secondary Schs. Activities Comm'n,* 182 W.Va. 454, 388 S.E.2d 480 (1989).

▇▇▇ Applying these factors to the case *sub judice,* we are convinced of the wisdom of addressing the merits of the issue before us. Given the number of public and private colleges and universities within this State as well as the plethora of college-aged youth among our State's residents, it is quite likely that the same, or a strikingly similar, issue could arise in a future case wherein a student athlete asserts his or her ability to compete in intercollegiate athletic contests when the NCAA, or some other entity, adjudges him/her to be ineligible. As such decisions most likely would occur during the student's final year of educational studies, the resolution of such a dispute would necessarily have to occur within a very finite period of time and, such as with the case *sub judice,* may not be capable of resolution within that temporal margin. Additionally, as we reiterated in *Israel,* "this question 'undisputably involves a

most vital public function——education of our youth. Because it is foreseeable that it will arise again, we find the question remains justiciable for future guidance.' " 182 W.Va. at 457, 388 S.E.2d at 483 (quoting *White v. Linkinoggor,* 176 W.Va. 410, 412, 344 S.E.2d 633, 635 (1986) (citations omitted)). Accordingly, we deem the instant appeal to be a cognizable claim, and thus, we proceed to review the circuit court's decision.

▇▇▇ The first matter to consider when assessing whether injunctive relief is warranted in a particular case is the nature of the underlying controversy. *See* Syl. pt. 4, in part, *State ex rel. Donley v. Baker,* 112 W.Va. 263, 164 S.E. 154. This case commenced as a complaint stating claims for relief for declaratory judgment and breach of contract, as well as the preliminary injunction that is at issue in the instant appeal. In order to properly consider the nature of the controversy, however, "the object for which the injunction is being sought," must also be contemplated. *See id.* As Hart's request for injunctive relief to enable him to enjoy an additional year of eligibility as a collegiate wrestler is inextricably entwined with the nature of controversy before us, we will simultaneously consider these two matters.

▇▇▇ Generally, injunctive relief is available to litigants who will sustain an irreparable injury if emergency action is not taken in their particular case. *See generally* 10A Michie's Jurisprudence *Injunctions* § 2 (1990). Under the facts presently before us, Hart bases his claim for injunctive relief upon his perceived right to participate in collegiate wrestling contests. This assertion standing alone, however, is not sufficient to support the issuance of a preliminary injunction. Simply stated, a student's ability to participate in athletic contests is not a right recognized by the law of this State.[10] "[P]articipation in interscholastic athletics ... does not rise to the level of a constitutionally protected 'property' or 'liberty' interest." *Bailey v. Truby,* 174 W.Va. 8, 21, 321 S.E.2d

---

10. That is not to say, however, that protected constitutional rights are not enforced when they coincide with educational interests. For example, this Court found that female students are entitled to have the same opportunity to partici-

pate in the sport of interscholastic baseball as their male counterparts. *See Israel v. West Virginia Secondary Schs. Activities Comm'n,* 182 W.Va. 454, 388 S.E.2d 480 (1989).

302, 316 (1984). *Accord Truby v. Broadwater,* 175 W.Va. 270, 272, 332 S.E.2d 284, 286 (1985). *See also Bailey,* 174 W.Va. at 23, 321 S.E.2d at 318 (concluding further that "[p]articipation in ... interscholastic athletics ... does not rise to the level of a fundamental ... right"). As Hart has no enforceable right to compete in collegiate wrestling contests, he has no existing right meriting protection by way of a preliminary injunction against the NCAA or the SoCon.[11]

■ Hart also raises a claim against the appellants based upon breach of contract. Like his general claim for relief, though, this cause of action also does not entitle him to injunctive relief as the record before us does not evidence a contractual relationship between these particular parties.[12] *See generally* Syl. pt. 2, *Go–Mart, Inc. v. Olson,* 198 W.Va. 559, 482 S.E.2d 176 (1996) (per curiam) (" 'The fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration and mutual assent. There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement.' Syl. pt. 5, *Virginian Export Coal Co. v. Rowland Land Co.,* 100 W.Va. 559, 131 S.E. 253 (1926)."); *Marshall v. Elmo Greer & Sons, Inc.,* 193 W.Va. 427, 430, 456 S.E.2d 554, 557 (1995) (per curiam) ("An implied contract 'presupposes an obligation arising from mutual agreement and intent to promise but where the agreement and promise have not been expressed in words.' " (quoting *Case v. Shepherd,* 140 W.Va. 305, 310, 84 S.E.2d 140, 143 (1954)) (additional quotations and citation omitted)). *See also Marshall,* 193 W.Va. at 430, 456 S.E.2d at 557 ("An implied contract arises from the principle of equity that one person may not enrich himself unjustly at the expense of another." (internal quotations and citations omitted)).

■ As Hart has failed to demonstrate that either the nature of the controversy or the object for which he seeks relief support the issuance of a preliminary injunction in this case, we need not consider the remaining criteria warranting the issuance of such relief, *i.e.,* "the comparative hardship or convenience to the respective parties." *See* Syl. pt. 4, in part, *State ex rel. Donley v. Baker,* 112 W.Va. 263, 164 S.E. 154. In summary, then, we conclude that the circuit court misapplied the governing law and abused its discretion in its order awarding Hart injunctive relief against the NCAA and SoCon. Accordingly, we vacate the preliminary injunction. Given the relatively nominal harm, if any, to the parties resulting from this erroneous ruling, however, we strongly object to any reprisal or adverse action contemplated by the appellants as a result of our decision herein.

## IV.

## CONCLUSION

For the foregoing reasons, the preliminary injunction awarded by the Circuit Court of Raleigh County by order entered January 8, 2001, is hereby vacated.

Vacated.

Chief Justice McGRAW dissents and reserves the right to file a dissenting opinion.

---

11. We make no ruling regarding Hart's right to relief against ASU, though, as ASU is not a party to the instant appeal.

12. Likewise, we make no ruling as to whether Hart has a valid claim for breach of contract against ASU since ASU is not presently before this Court. *See supra* note 11.