IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-1352

_____

FILED

April 11, 2013

released at 3:00 p.m.

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CARLOS A. LEEPER-EL,
Petitioner Below, Petitioner

v.

ADRIAN HOKE, Warden,
Huttonsville Correctional Center,
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Ohio County
The Honorable Arthur M. Recht, Judge
Case Number 11-C-188
DISMISSED

_____

Submitted: March 26, 2013
Filed: April 11, 2013

Christopher J. Prezioso, Esq.            Patrick Morrisey, Esq.
Luttrell & Prezioso, PLLC                Attorney General
Charles Town, West Virginia             Marland L. Turner, Esq.
Counsel for Petitioner                   Assistant Attorney General
                                         Charleston, West Virginia
                                         Counsel for Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS

"Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided." Syllabus Point 1, *Israel by Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989).

Per Curiam:

Petitioner Carlos A. Leeper-El ("Mr. Leeper-El") filed a petition for a writ of habeas corpus with the Circuit Court of Ohio County arguing that his plea agreement was defective because it contained a promise – that his state and federal sentences would be run concurrently – which was not fulfilled or that was unfulfillable. Mr. Leeper-El requested that he be discharged from state custody so that he could immediately begin serving his federal prison sentence. The circuit court denied this petition on September 8, 2011. Mr. Leeper-El thereafter filed the present appeal arguing that the circuit court erred in denying his writ because 1) he received ineffective assistance of counsel and 2) his plea agreement was based on a promise which was not fulfilled or that was unfulfillable.

While the instant appeal was pending, Mr. Leeper-El was paroled from the West Virginia Department of Corrections and he is no longer in the custody of the State of West Virginia. Mr. Leeper-El is currently in federal custody, serving his federal criminal sentence at a federal prison in Philadelphia, Pennsylvania. Shortly before oral argument in this matter, this Court was informed that the federal authorities credited Mr. Leeper-El for all of the time he served in state custody. Thus, his state and federal sentences were effectively served concurrent to each other. Because Mr. Leeper-El is no longer in the

1

custody of the State of West Virginia and has obtained the relief he sought in his habeas petition, we find that the instant appeal is moot.[1]

## I. Facts & Background

On April 8, 2005, Mr. Leeper-El was granted supervised release from federal custody.[2] Approximately four months after being released from federal custody, Mr. Leeper-El was charged with first degree robbery in Ohio County, West Virginia. He subsequently entered a plea agreement with the State, agreeing to plead guilty to the lesser included offense of second degree robbery.

In exchange for this guilty plea, the State agreed to recommend that "any sentence imposed by the [Circuit] Court run concurrent to any Federal sentence imposed by the United States District Court for violation of his supervised release." The plea agreement informed Mr. Leeper-El that "any recommendation" made by the State to the circuit court "is

---

[1] While this case was pending before the Court, Patrick Morrisey was sworn into office as Attorney General for the State of West Virginia, replacing former Attorney General Darrell V. McGraw, Jr.

[2] The appendix record contains a brief description of Mr. Leeper-El's underlying criminal offense that led to his federal incarceration. Based on the limited information in the record, it appears that Mr. Leeper-El was convicted of armed bank robbery in 1982 and received a twenty-five year federal prison sentence.

non-binding upon the Court and the sentence imposed by the Court is in the sole and

unfettered discretion of the Court."[3]

On January 6, 2006, the circuit court held a sentencing hearing. During this

hearing, counsel for Mr. Leeper-El was aware that the promise of a concurrent state and

federal sentence was dependent on whether the federal authorities were going to institute

supervised release revocation proceedings against Mr. Leeper-El.[4] Mr. Leeper-El's lawyer

informed the circuit court that

> the prosecutor agreed also to run this [sentence] concurrent with
> his federal time. We have since found out that the feds didn't
> feel a necessity to do anything, obviously we know why. So
> they may pick it up or they may not pick it up, even after the
> sentencing.

---

[3] The plea agreement also included the State's promise not to file a recidivist
information against Mr. Leeper-El.

[4] 28 C.F.R. § 2.47 [1996] sets forth the options that are available to federal authorities
when a person on supervised release begins serving a new state sentence. It says,

> (c) If the prisoner is serving a new state or local sentence, the
> Regional Commissioner, following a dispositional record review
> may:
> (1) Withdraw the detainer and order reinstatement of the parolee
> to supervision upon release from custody, or close the case if the
> expiration date has passed.
> (2) Order a revocation hearing to be conducted by a hearing
> examiner or an official designated by the Regional
> Commissioner at the institution in which the parolee is confined.
> (3) Let the detainer stand and order further review at an
> appropriate time. If the warrant is not withdrawn and no
> revocation hearing is conducted while the prisoner is in state or
> local custody, an institutional revocation hearing shall be
> conducted after the prisoner's return to federal custody.

Mr. Leeper-El's lawyer further demonstrated his awareness that the promise of concurrency was dependent on the federal authorities when he asked the circuit court to allow Mr. Leeper-El to have a hearing pursuant to Rule 35(b) of the *West Virginia Rules of Criminal Procedure*[5] "depending on what the feds do." The circuit judge stated that he would take a Rule 35(b) motion under advisement if the circumstances giving rise to such a motion occurred.

The circuit judge acknowledged that the plea agreement called for the state sentence to run concurrent to the federal sentence. However, the circuit judge told Mr. Leeper-El, "I would just caution you not to be relying on the fact that there would be a material change in your sentence." The circuit judge made it clear that the concurrency of the state and federal sentences was contingent on the actions taken by the federal authorities. The circuit judge stated, "To the extent that it's possible, you are to put in the order that the sentence should be served in the federal penitentiary system, but I do not have the authority

---

[5] Rule 35(b) of the *West Virginia Rules of Criminal Procedure* states,

> (b) Reduction of Sentence. – A motion to reduce a sentence may be made, or the court may reduce a sentence without motion within 120 days after the sentence is imposed or probation is revoked, or within 120 days after the entry of a mandate by the supreme court of appeals upon affirmance of a judgment of a conviction or probation revocation or the entry of an order by the supreme court of appeals dismissing or rejecting a petition for appeal of a judgment of a conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

to order them [the federal government] to take it."  The circuit court thereafter accepted the plea agreement and entered a commitment order sentencing Mr. Leeper-El as follows,

> It is adjudged that the Defendant is hereby committed to the custody of the commissioner of the West Virginia Division of Corrections, or his authorized representative for imprisonment for a period of 5-18 years WVDOC to run concurrent with federal sentence.

Mr. Leeper-El filed a *pro se* petition for a writ of habeas corpus on June 16, 2011.  Mr. Leeper-El argued that his guilty plea to second-degree robbery "was unlawfully induced by a promise that he would serve his sentence while serving an anticipated federal sentence for violation of supervised release from federal custody."  His habeas corpus petition requested that the circuit court grant him an unconditional discharge from state custody so that he could begin serving his federal sentence.[6]

---

[6] Mr. Leeper-El filed his habeas corpus petition pursuant to *W.Va. Code* § 53-4A-1(a), which states

> (a) Any person convicted of a crime and incarcerated under sentence of imprisonment therefor who contends that there was such a denial or infringement of his rights as to render the conviction or sentence void under the Constitution of the United States or the Constitution of this State, or both, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under the common law or any statutory provision of this State, may, without paying a filing fee, file a petition for a writ of habeas corpus ad subjiciendum, and prosecute the same, seeking release from such illegal imprisonment, correction of the

(continued...)

5

The circuit court denied Mr. Leeper-El's habeas corpus petition on September 8, 2011. The circuit court found that the terms of the plea agreement did not include "any firm promise as to the outcome of his sentencing." Instead, the agreement provides that the State would *recommend* that his state sentence be served concurrent to his federal supervised release violation. The circuit court also found that the recommendation of concurrency was

---

[6](...continued)

sentence, the setting aside of the plea, conviction and sentence, or other relief, if and only if such contention or contentions and the grounds in fact or law relied upon in support thereof have not been previously and finally adjudicated or waived in the proceedings which resulted in the conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings which the petitioner has instituted to secure relief from such conviction or sentence. Any such petition shall be filed with the clerk of the supreme court of appeals, or the clerk of any circuit court, said supreme court of appeals and all circuit courts of this State having been granted original jurisdiction in habeas corpus cases by the Constitution of this State, or with the clerk of any court of record of limited jurisdiction having criminal jurisdiction in this State. Jurisdiction is hereby conferred upon each and every such court of record of limited jurisdiction having criminal jurisdiction (hereinafter for convenience of reference referred to simply as a "statutory court") to refuse or grant writs of habeas corpus ad subjiciendum in accordance with the provisions of this article and to hear and determine any contention or contentions and to pass upon all grounds in fact or law relied upon in support thereof in any proceeding on any such writ made returnable thereto in accordance with the provisions of this article. All proceedings in accordance with this article shall be civil in character and shall under no circumstances be regarded as criminal proceedings or a criminal case.

made contingent on the bringing of federal parole violation proceedings in the United States District Court. Were federal parole officials to bring violation proceedings, and were a federal sentence imposed, the sentencing order . . . . would permit Petitioner to continue serving his state sentence while in federal custody.

After the circuit court denied his habeas corpus petition, Mr. Leeper-El filed the instant appeal. While the instant appeal was pending, Mr. Leeper-El was paroled from the West Virginia Department of Corrections and he is no longer in the custody of the State of West Virginia. Mr. Leeper-El is currently in federal custody serving a federal criminal sentence. The terms of Mr. Leeper-El's federal sentence are set forth in his Federal Expedited Revocation document. This revocation document states that Mr. Leeper-El was sentenced to 90 months for violating his supervised release agreement. The revocation document also states that Mr. Leeper-El received federal credit for *all* 85 months he spent in state custody while serving his state sentence. Because he received credit for all 85 months he spent in state custody, Mr. Leeper-El only has to serve five months in federal custody.[7] Thus, Mr. Leeper-El's state and federal sentences were effectively run concurrent to one another.

---

[7] Mr. Leeper-El's estimated release date from federal custody is April 13, 2013.

7

## II. Standard of Review & Analysis

We begin by addressing whether the instant appeal is moot. Mr. Leeper-El's habeas petition requested that he be discharged from state custody so that he could begin serving his federal sentence for violating his federal supervised release. Mr. Leeper-El has been paroled from state custody. He is currently serving his federal sentence. Because Mr. Leeper-El has received the relief he sought in his habeas petition, the State argues that the present appeal is moot. We agree.

In Syllabus Point 1 of *Israel by Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989), this Court set forth a three-factor test to be considered in deciding whether to address technically moot issues:

> Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

This Court also discussed when it will consider a technically moot issue in *State ex rel. Bluestone Coal Corp.* v. *Mazzone*, 226 W.Va. 148, 156, 697 S.E.2d 740, 748 (2010), stating that

> although changes may occur during the course of litigation that typically would render a case moot, the particular circumstances

8

attending such changes may preserve the merits of the case so as to save it from mootness and to permit its consideration by the presiding tribunal. *See Hart v. National Coll. Athletic Ass'n*, 209 W.Va. 543, 548, 550 S.E.2d 79, 84 (2001) (per curiam) ("[T]he simple fact of apparent mootness, in and of itself, does not automatically preclude our consideration of [a] matter."). Thus, a case may survive mootness upon a change of circumstances. "When collateral effects of a dispute remain and continue to affect the relationship of litigants, the case is not moot." *Firefighters Local* [*Union No. 1784 v. Stotts*], 467 U.S. [561], at 585, 104 S.Ct. [2576], at 2591, 81 L.Ed.2d 483 (O'Connor, J., concurring) (footnote and citations omitted). A case also may survive mootness despite a change in party status. "As long as the parties have a concrete interest in the outcome of the litigation, the case is not moot [.]" *Firefighters Local*, 467 U.S. at 571, 104 S.Ct. at 2584 (citation omitted). Finally, "[a] case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review." Syl. pt. 1, *State ex rel. M.C.H. v. Kinder*, 173 W.Va. 387, 317 S.E.2d 150 (1984).

In the case *sub judice*, we find that the *Israel* factors weigh in favor of the State. Mr. Leeper-El received the relief he sought in his habeas petition: he has been released from state custody. Additionally, Mr. Leeper-El received federal credit for *all* 85 months he spent in state custody. Because his state and federal sentences were effectively run concurrent to each other, we find that the underlying error he complained of is moot. Further, we find that Mr. Leeper-El has failed to demonstrate that this case contains an issue which may be repeatedly presented to the trial court, yet escapes review at the appellate level. Our law on a plea agreement that contains a promise which was not fulfilled or that was unfulfillable is clearly set forth in *State ex rel. Morris v. Mohn*, 165 W.Va. 145, 267 S.E.2d

9

443 (1980), and we find nothing in the instant case that compels us to clarify our holding therein.[8]

Accordingly, we need not and will not exercise our discretion to decide the moot issue raised in this appeal.

## IV. Conclusion

Having established that the matter is moot, this appeal is dismissed from the docket of this Court.

Dismissed as moot.

---

[8] Syllabus Point 1 of *Morris* states

> [a] recognized corollary to the principle that a guilty plea must be shown to have been intelligently and voluntarily entered is the rule that if the plea is based on a plea bargain which is not fulfilled or is unfulfillable, then the guilty plea cannot stand.

In *Morris*, a defendant filed a petition for a writ of habeas corpus after the State and circuit court promised him that his state and federal sentences *would* run concurrently even though his federal parole revocation proceedings were not imminent. This Court granted the defendant's writ in *Morris* because the promise was legally impossible to perform as neither the State nor the circuit court had control over the defendant's federal parole revocation proceedings. In the present case, Mr. Leeper-El was not promised that his state sentence would run concurrent to his federal sentence. Instead, the circuit court clearly stated during the sentencing hearing that it had no control over the actions of the federal authorities. The State and circuit court only promised Mr. Leeper-El that *in the event that* the federal authorities did institute supervised release revocation proceedings while he was serving his state sentence, the circuit court would allow him to be transferred to federal custody and to serve his state sentence concurrent to his federal sentence. Thus, the present case is clearly distinguishable from *Morris*.