# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

_____

No. 21-0579

_____

FILED

October 26, 2022

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**CITY OF MARTINSBURG,**
Defendant Below, Petitioner,

v.

**COUNTY COUNCIL OF BERKELEY COUNTY,**
Plaintiff Below, Respondent.

_____

Appeal from the Circuit Court of Berkeley County
The Honorable Michael Lorenson, Judge
Civil Action No. CC-02-2021-C-14

**APPEAL DISMISSED AS MOOT**

_____

Submitted: September 14, 2022
Filed: October 26, 2022

Floyd McKinley Sayre, III, Esq.
Bowles Rice LLP
Martinsburg, West Virginia
Counsel for the Petitioner

Anthony J. Delligatti, Esq.
Jeffery T. Mauzy, Esq.
Martinsburg, West Virginia
Counsel for the Respondent

CHIEF JUSTICE HUTCHISON delivered the Opinion of the Court.

JUSTICE WOOTON concurs and reserves the right to file a separate opinion.

# SYLLABUS

"Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court." Syl. pt. 1, *State ex rel. Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908).

**HUTCHISON, Chief Justice**:

In this appeal from the Circuit Court of Berkeley County, the parties ask us to examine a dispute between the City of Martinsburg ("the City") and the Berkeley County Council ("the County"). The circuit court entered an injunction halting the City's efforts to regulate the County's excavation and construction of a parking lot on land owned by the County but located within the City's boundaries. The City now appeals the injunction because it wants to compel the County to comply with a municipal stormwater ordinance in its excavation and construction.

However, the excavation and construction the City seeks to regulate has been completed by the County. Moreover, while the parties' dispute seems to raise novel questions of law with a potential to arise again in the future, the City's briefing fails to address the questions clearly and properly. Accordingly, we dismiss the appeal as moot.

## I. Factual and Procedural Background

Understanding the complexity of the parties' dispute requires that we briefly discuss the pollution laws and regulations governing stormwater. Congress enacted the Clean Water Act to prohibit entities from discharging pollutants into the waters of the United States unless the entity obtains a permit under the "National Pollution Discharge Elimination System" or "NPDES." *See* 33 U.S.C. §1251 *et seq*. (1972). A state may obtain an NPDES permit to regulate "discharges into navigable waters within its own jurisdiction[.]" 33 U.S.C. § 1342(b). Further, an NPDES permit may regulate "discharges

1

composed entirely of storm water." 40 C.F.R. § 122.26. The West Virginia Department of Environmental Protection ("DEP") has obtained an NPDES permit that allows for the operation and regulation of "municipal separate storm sewer systems" (often referred to by the moniker "MS4") in West Virginia. *See* 40 C.F.R. § 122.26; 47 CSR § 10.2.29 (2012).

The West Virginia Legislature has empowered municipalities "to own, acquire, construct, equip, operate and maintain . . . [a] stormwater collection system and control system[.]" W. Va. Code § 16-13-1(a)(2) (2001). The Legislature has also provided that municipalities with stormwater systems, and which are designated as "Separate Storm Sewer System" communities under federal and state law, have "the authority to enact ordinances . . . which allow for the issuance of orders, the right to enter properties and the right to impose reasonable fines and penalties regarding correction of violations of municipal stormwater ordinances . . . within the municipal watershed served by the municipal stormwater system," as well as the authority to file an action to "bring the party into compliance with the applicable stormwater ordinance[.]" W. Va. Code §§ 16-13-23a(l) and (m) (2008). *See also* W. Va. Code §§ 8-20-10(f) and (g) (2020) (similarly authorizing municipalities designated as separate storm sewer system communities to enact stormwater ordinances and compel compliance with the ordinances).

The City operates a municipal separate stormwater sewer system and has an NPDES permit through the DEP. The City has adopted a stormwater management ordinance to regulate stormwater discharges. *See Stormwater Management Ordinance of the City of Martinsburg*, Ordinance 2013-17.

2

The County owns a building located within the City's limits and, in January 2021, was excavating and reconstructing the building's parking lot. After an inspection, the City sent notice that the County had violated the stormwater management ordinance because it failed to obtain a permit or submit plans for the excavation to the City. The City threatened that it would obtain a stop work order regarding the County's excavation, and it also threatened that it might pursue "other civil and criminal penalties."

The County responded to the City's threats by filing the instant action against the City seeking injunctive relief. On January 29, 2021, the circuit court granted the County a temporary restraining order precluding further action by the City. After receiving exhibits and arguments from the parties, the circuit court granted a permanent injunction on June 23, 2021.

The City now appeals the circuit court's permanent injunction order. However, while this action was pending, the County completed the excavation and construction on the parking lot at issue.

## II. Discussion

The parties have raised several policy arguments regarding the propriety of the circuit court's injunction order. The City generally insists that the Legislature authorized it to adopt a stormwater ordinance in line with federal and state pollution laws. Further, it insists the Legislature has empowered it to enforce its stormwater ordinance against any party violating the ordinance within the City, including the County. The City

3

argues that it is bound to protect its NPDES permit by ensuring that all entities within its border comply with federal, state and city stormwater guidelines.  Conversely, the County asserts that it has its own NPDES permit and guidelines that it chooses to operate under. The County also asserts that it is an independent political subdivision of the State that cannot be subjected to regulation from a municipality.  Finally, to the extent the City seeks to impose a permit requirement, the County contends that state law exempts counties from municipal construction permit requirements.  *See* W. Va. Code § 8-12-14 (1992) (granting municipalities "plenary power and authority" to require construction permits to enforce the State's building code but providing that "no such permits may be required of the state, a county or other governmental entity, its contractors, agents or employees[.]").

While the legal positions of the parties appear to have great consequence to the relations between the cities and counties of this State, we decline to review them for an obvious reason: the parties' dispute is moot.  When this case was filed in the circuit court, the City sought to regulate the County's excavation and construction activity, but the County has completed the parking lot and is no longer engaged in excavation and construction.  Hence, any relief granted to the City at this point would be of no avail. "Although there existed a true controversy befitting judicial intervention when this case was originally submitted" to the circuit court, that specific controversy no longer exists. *Hart v. Nat'l Collegiate Athletic Ass'n*, 209 W. Va. 543, 548, 550 S.E.2d 79, 84 (2001).  A case "in which a controversy no longer exists" and which "presents only an abstract

4

question that does not arise from existing facts or rights" is, by definition, moot. *Black's Law Dictionary* (11[th] ed. 2019).

Our law is clear: "Courts will not ordinarily decide a moot question." Syl. pt. 1, *Tynes v. Shore*, 117 W. Va. 355, 185 S.E. 845 (1936). "Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or property are not properly cognizable by a court." Syl. pt. 1, *State ex rel. Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908). Nevertheless, this Court recognizes that technical mootness, in and of itself, does not automatically preclude our consideration of a matter. If a legal question of great public import is capable of repetition yet likely to evade review, then this Court may choose to examine the question despite it being technically moot.[1] However, in the instant case, we decline to attempt a review of the issues raised because they are not properly presented.

---

[1] As we said in Syllabus Point 1 of *Israel v. W. Va. Secondary Schools Activities Commission*, 182 W. Va. 454, 388 S.E.2d 480 (1989):

> Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

First and foremost, we decline to review the complex issues raised because the City's briefs do not address the statutes that appear to form the legal basis for the City's stormwater ordinance. Article I of the City's stormwater ordinance provides it was enacted (in part) pursuant to Chapter 8, Article 20 and Chapter 16, Article 13 of the West Virginia Code. *See Stormwater Management Ordinance*, 2013-17, Article I, § A(2). In one long sentence of its brief, the City lists these same chapters and articles. Petitioner's Brief at 4-5. Nowhere else does the City's brief discuss these relevant statutes, nor does the brief argue how this Court should interpret or apply these statutes in the context of the parties' dispute.

Second, we decline to review the issues raised because the City's new brief fails to fully meet the requirements of Rule 10 of the Rules of Appellate Procedure. We say "new" brief because, on May 31, 2022, we rejected the City's "old" brief because it too failed to comply with Rule 10. For example, Rule 10(c)(7) provides that a brief "must contain appropriate and specific citations to the record on appeal," and provides that this Court "may disregard errors that are not adequately supported by specific references to the record on appeal." By our count, the City's old brief contained only three citations to the record; the new brief now contains five citations. Nevertheless, the City's new brief repeatedly refers to and/or quotes passages from the 345-page record without any citations. The City's brief also refers to an April 2021 administrative order of consent against the City by the United States Environmental Protection Agency "which requires the City to control runoff from new and redevelopment projects." Petitioner's Brief at 9. However,

6

the records of that federal proceeding were not made part of the appellate record and are not discussed in the brief beyond the cursory reference above.

We recognize that an appellate lawyer operates within the constraints of a client's wishes and checkbook. However, those constraints do not obviate the Rules of Appellate Procedure. "As advocate, a lawyer zealously asserts the client's position *under the rules of the adversary system*." Preamble, W. Va. Rules of Professional Conduct (2015) (emphasis added). Likewise, this Court is entitled to strict adherence to the Rules of Appellate Procedure; compliance with the Rules is essential to our ability to carefully review and fairly decide cases. Because the legal issues implicated by the parties were not addressed in a manner compliant with Rule 10, we decline to address them.

In summary, the dispute on appeal between the parties is moot. While the legal questions raised by the dispute are of great public significance, appear capable of repetition and may yet evade legal review, we refuse to address them in the form presented.

Appeal dismissed as moot.